FRANCIS C. WELCH & another, trustees, *vs.* JOHN V. APTHORP & others.

Suffolk.    March 15, 1909. — October 18, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Trust,* Construction.    *Income,* Apportionment on death of beneficiary of trust.

Under the provisions of a trust deed, the trustees were directed to pay a certain portion of the net income to A. during her life and after her death to other beneficiaries, interest on mortgages to a certain amount was to be charged against A.'s income, which after her death was to be charged to other beneficiaries, and a certain amount was to be deducted annually from A.'s income for a sinking fund to be applied to the reduction of the principal of the mortgage debt. It also was provided that the distribution of income " shall be made quarterly or oftener at the convenience of the trustees, upon the written order or receipt of the persons entitled thereto, . . . and not by way of anticipation; and said income shall not be assignable or alienable by [the beneficiaries], or liable for their debts, contracts or engagements. The quarter days for payment as established by the trustees are to be considered as the dates of distribution in determining the persons who are entitled to said income." The trustees made payments of fixed sums of income to beneficiaries on the first days of April, July and October in each year, and a payment of the balance due according to a statement then rendered on the first of January. A. died on a March 4. *Held,* that the income must be treated as accruing from day to day, and that the administrator of A.'s estate was entitled to A.'s proportional part of such income as had accumulated at the time of her death, less such portion of interest on the mortgage and of the payment for the sinking fund as should be apportioned to her according to the date of her death.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on August 13, 1908, by the trustees under a deed of trust, for instructions.

The trust deed was elaborate, and covered eleven pages of the printed record. By its provisions certain real estate was conveyed to the trustees in trust, among other things, to pay, from the net income thereof, by paragraph 22, " one fifth to Mary S. Apthorp during her life," and after her death to her husband,

John V. Apthorp, one of the defendants; by paragraph 23, "one fifth to said Mary S. Apthorp during her life" and after her death to her son, Isaac Rand Thomas, one of the defendants; by paragraph 24, one fifth to Eliza Whitwell Bradlee during her life, and to certain persons after her death; by paragraph 25, one fifth to Mary Frances Thomas during her life and after her death to certain other persons; and by paragraph 26, one fifth to Lucy Alsop Thomas, and on her death to certain other persons.

Paragraph 27 read as follows: " 27. Provided, however, that during the life of the said Mary S. Apthorp one third of the entire net income of the trust estate shall be paid to her, and the persons to whom said income would otherwise be paid, as hereinbefore apportioned, shall during her life receive so much less."

Material portions of paragraphs 28 and 29 read as follows:

" 28. . . . During the life of the said Mary S. Apthorp interest upon the sum of one hundred and twenty-two thousand five hundred dollars shall be charged to the two fifths' share of the income of the trust estate apportioned to the said Mary in sections twenty-two and twenty-three of this instrument; and interest upon the sum of sixty thousand dollars shall be charged to the one fifth share of said income apportioned to the said Lucy Alsop Thomas and others in section twenty-six of this instrument. After the death of the said Mary S. Apthorp, interest upon the sum of twenty-seven thousand five hundred dollars shall be charged to the one fifth share of the net income of the trust estate apportioned to the issue of the said Mary and others in section twenty-two of this instrument; interest on the sum of ninety-five thousand dollars shall be charged to the one fifth share of the said net income apportioned to the said Isaac Rand Thomas and others in section twenty-three of this instrument; and interest on the sum of sixty thousand dollars shall be charged to the one fifth share of the said net income apportioned to the said Lucy Alsop Thomas and others in section twenty-six of this instrument, . . .

" The trustees shall, beginning with the year eighteen hundred and ninety-eight, retain annually from the share of the net income apportioned to the said Mary S. Apthorp and others in section twenty-two of this instrument the sum of one thousand dollars

per annum, which sum shall be invested and with the increment thereof shall be held as a sinking fund, and applied to the discretion of the trustees to the reduction of the principal of that portion of the mortgage debt herein charged upon the share of the said Mary S. Apthorp, — namely, twenty-seven thousand five hundred dollars; and, after each such application, the amount of interest charged to the said share shall be reduced accordingly. . . .

" 29. The distribution of income, as aforesaid, shall be made quarterly or oftener at the convenience of the Trustees, upon the written order or receipt of the persons entitled thereto, signed at or immediately before the payment thereof, or by cheque payable to their order, and not by way of anticipation ; and said income shall not be assignable or alienable by them, or liable for their debts, contracts or engagements. The quarter days for payment as established by the trustees are to be considered as the dates of distribution in determining the persons who are entitled to said income."

It appeared that the payments of income, as made by the trustees since January 26, 1899, were fixed amounts on the first days, respectively, of April, July and October in each year, and the balance on January 1, with an account submitted to the beneficiaries, stating all receipts and disbursements and the amounts of income distributed to the various beneficiaries.

Mary S. Apthorp died on March 4, 1908, and the defendant John V. Apthorp, her husband, survived her. The total net income of the trust (not deducting the amounts of interest on said mortgages) for the period beginning January 1, 1908, and ending March 4, 1908, was, approximately, $11,166, of which the proportionate share of said Mary S. Apthorp would amount to approximately $6,987.60. The mortgage interest upon the sum of $122,500 amounted, for the period from December 8, 1907, to March 4, 1908, to the sum of $1,156.94. Of the $1,000 sinking fund, the proportionate amount to be charged against the period from January 1, 1908, to March 4, 1908, the date of the decease of Mary S. Apthorp, if that charge was to be apportioned, was, approximately, $261.11.

The instructions asked for by the plaintiffs were: (*a*) whether the net income of the trust estate was to be apportioned as of March 4, 1908, the date of the decease of Mary S. Apthorp;

(*b*) upon what interests was the amount of interest upon the mortgages of $122,500 up to March 4, 1908, the date of the decease of Mary S. Apthorp, to be charged, and in what proportions; and (*c*) in the event that such income was to be apportioned as of March 4, 1908, what proportion, if any, of $1,000 to be set aside annually as a sinking fund was to be charged against the estate of Mary S. Apthorp.

Other facts are stated in the opinion.

The case was heard by *Sheldon*, J., who ordered a decree to be entered, instructing the plaintiffs that that part of the net income of the trust estate which was payable to Mary S. Apthorp should be apportioned as of March 4, 1908, the date of her decease, and that the amount which was payable to her up to that time, after making the deductions provided for by the trust deed, ought to be paid to the administrator of her estate, proportionate to the period from January 1, 1908, to the date of her decease; and that the interest upon $122,500 and the charge of $1,000 for a sinking fund should be apportioned in the same way, and the amount of these charges from January 1, 1908, to the time of her decease should be charged against and deducted from the amount of income payable to her as aforesaid; and that the net balance remaining should be paid to the administrator of her estate. At the request of the defendant Lucy Alsop Thomas, the presiding justice reported the case for determination by the full court such decree to be entered as law and justice might require.

*I. H. Ellis,* for the trustees, stated the case.

*J. Noble,* (*A. P. Loring* with him,) for certain defendants.

*S. C. Bennett,* for the defendant Lucy A. Thomas.

BRALEY, J. The trustees at the death of Mary S. Apthorp, the beneficiary for life, either had received or were entitled to receive as due and payable although not yet collected a sum representing a quarter of the annual income from the estate. But, her death having occurred shortly before the day fixed by them for quarterly payments, the succeeding beneficiary contends that no part of this amount is payable to her administrator. We are of opinion that this position cannot be maintained. In the plan of distribution Mrs. Apthorp received nine fifteenths of the net income, but instead of absolutely fixing the times of

payment, paragraph 29 provides, that payments "shall be made quarterly or oftener at the convenience of the trustees." If it is also provided, that the quarter days for payment as established by them are to be considered as the dates of distribution in determining the persons who are entitled to the income, the periods would still be movable as they might decide, although they must pay from time to time during the year. If this paragraph is read in connection with paragraph 27, whereby one third of the entire net income is to be paid to her for life, it is reasonably plain that the principal purpose as to income was to provide for her maintenance, especially as she had contributed to the trust estate not only her title in fee acquired by inheritance from her deceased sons, but her right to dower in the premises. The necessity of support being manifestly implied, it was not intended that, if death intervened before the end of the period fixed by the trustees, she should lose the benefit conferred and be cut off from a means of subsistence, even if the allowance could not be anticipated by orders drawn on them, or whether it could have been reached by a creditor's bill in payment of her debts. It furthermore may be said, that the closing sentence of this clause was not intended to limit the rights of the beneficiaries for life as between themselves and the remaindermen but only, as between themselves and any persons who may claim under them upon orders or assignments.

The defendant urges that the decision in *Hemenway* v. *Hemenway*, 171 Mass. 42, is decisive against this view. But the cases are clearly distinguishable. In *Hemenway* v. *Hemenway*, the testator directed that the income should be paid in equal semiannual payments, "the first payment thereof to be made at the end of six months next after my death . . . to such of the said four persons, namely, my wife and three children, as may be living at the time of payment," and, the right given having been expressly made dependent upon the times of payment, it was held to have been limited to those in existence on the dates fixed. In the case at bar, the income as we have said was for the life of Mrs. Apthorp, and must be treated as accruing from day to day, although the trustees, who are authorized to pay it oftener, may for their own convenience make the payments quarterly. The

income having been earned, even if at her death the whole had not been actually collected, should be apportioned as of that date, and the amount then coming to her, less the proportionate deductions for interest on the mortgage, and charges for the sinking fund called for by the deed, are to be paid to the administrator of her estate.

*Decree accordingly.*