[L. A. No. 7083. In Bank.—April 11, 1923.]

ELMER M. PRICHARD et al., Respondents, v. CAROLYN KIMBALL et al., Appellants.

[1] PLEADING—ANSWER—STRIKING OUT OF AS SHAM—DEFENSE.—Before it can be said that an answer was properly stricken out on the ground that it was sham, it must appear that no defense was set up by it, for a verified answer, setting up a defense, either affirmatively or by a denial of the allegations of the complaint, may not be considered sham before a trial of the issues.

[2] LANDLORD AND TENANT — CANCELLATION OF LEASE OF RECORD — PLEADING—DENIAL IN ANSWER—ISSUES.—In an action to have declared void a lease, to secure its cancellation of record and delivery up to plaintiffs, the lessors, to have the cloud upon their title to the leased premises caused by the lease removed and to recover attorney's fees and costs, denials in the answer that the lease and option to purchase therein contained, or either of them, had become a nullity, or that they threw a cloud on plaintiffs' title, were conclusions of law which raised no issue, and a further denial that the defendants threatened to use the documents vexatiously against plaintiffs was immaterial, where the material allegation of the complaint in this respect was that if left outstanding there was reasonable apprehension that the lease and

option would cause serious injury to plaintiffs, in that defendants were setting up some claim under the instruments.

[3] ID.—ATTORNEY'S FEES—DENIAL IN ANSWER—ISSUES.—In such action, the denial in the answer that a stated sum was a reasonable attorney's fee was immaterial, the attorney's fee provided in the lease not being the cause of action, but an incident to it.

[4] ID.—LEASE AND OPTION TO PURCHASE—ASSIGNMENT—CONSTRUCTION OF INSTRUMENTS.—Where a lease and an option to purchase therein contained formed one document, the lease providing that the lessees should not assign it without the written consent of the lessors, and with reference to the option it was provided that should the conditions of the lease be performed and the option exercised by the lessees, the purchase price should be paid in installments and no deed should be given by the lessors until sixty per cent of the purchase price was paid, it cannot be said the lessors intended, as to the option, to deal with anyone whom the lessees might select; but the option must be held to be a part of the lease and governed by the clause that no assignment should be made except with the written consent of the lessors.

[5] ID.—PLEADING—OPTION—DAMAGES—ISSUES.—In such action, where it was not alleged that the plaintiffs agreed to the transfer of the option rights to any of the purchasers which the defendants alleged they had procured, defendants' claim for damages based solely on the fact that the plaintiffs had prevented them from selling the property at a profit was without merit and presented no issue.

[6] ID.—PLEADING—NOTICE—DEMAND.—In such action, the point that the complaint failed to state a cause of action because it did not allege that notice by the plaintiffs was given in the event of a breach of the lease by the lessees and that demand was made for the giving of a deed by the lessees in case they did not exercise their option of purchase, as provided by said lease, may be raised at any time during the proceedings, even in the absence of a demurrer.

[7] ID.—DEMAND—WHEN UNNECESSARY.—A demand is unnecessary where it appears it would be unavailing.

[8] ID.—PLEADING—DEMAND.—In such action, where the complaint alleged that defendants were setting up some claim of right under the lease and option, and the defendants in their answer set forth their claim and asked a decree that they be allowed to exercise the option, under such circumstances a demand by the plaintiffs on the defendants for a deed which the lease provided the latter should execute in case they failed to exercise the option was unnecessary.

[9] ID.—LEASE—ATTORNEY'S FEES—CHARACTER OF ACTION.—Under a lease allowing reasonable attorney's fees in case suit should be

brought to enforce any of the terms of the lease or for "quieting title to, or obtaining possession of, the said premises," such attorney's fees are not allowable in an action to have the lease declared void and to secure its cancellation of record.

[10] ID.—JUDGMENT—CONSTRUCTION OF.—In such action, the provision of the judgment that plaintiffs recover attorney's fees and costs from all of the defendants, but "all to be paid in due course of administration of the estate of" one of the deceased lessees, could only have reference to such portion of the total amounts as were collectible from the estate and was not a direction that the whole judgment be collected from it.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

D. A. Stuart for Appellants.

Geo. A. Prichard, Leslie E. Clawson and M. M. Meyers for Respondents.

LAWLOR, J.—This action was brought by the plaintiffs to have declared void a lease, to secure its cancellation of record and delivery up to them, to have the cloud upon their title to the leased premises caused by the lease removed, and to recover attorneys' fees and costs.

Plaintiffs, on June 30, 1917, were the owners of certain described real property in Los Angeles County and on that date leased it to Wade H. Kimball and to A. J. O. Korbel, one of the defendants herein. The lease by its terms was to expire December 31, 1920. Some time before November 18, 1918, defendant Korbel assigned his interest in it to Wade H. Kimball. On the latter date a supplementary lease was entered into between plaintiffs Elmer M. Prichard and Hallie Prichard, who are husband and wife, as lessors, and Wade H. Kimball and defendant Carolyn Kimball as lessees, in which was incorporated all the provisions of the first lease. Wade H. Kimball is now deceased and defendants Carolyn Kimball, his wife, and A. C. Thorpe, are the administrators of his estate.

By the terms of the lease the lessees agreed to erect a frame cottage upon the property, which was to become a

part of the realty; to cultivate the land in a proper manner; to commit or suffer no waste or damage to be done to the premises; to pay the lessors $50 per month rental; to pay all regular state, county, and city taxes levied, and to have the house they were to construct insured. It was further understood and agreed that the lessees might make at their own expense other improvements upon the premises, such as the installation of pipe-lines and pumping facilities; that time should be of the essence of the contract; that in event of a failure of the lessees to perform any of their obligations under the contract the lessors should give them notice of the breach, whereupon the lessees should have thirty days to perform the things required by the notice; that the parties of the second part should not assign the lease without the written consent of the lessors, except from one to another, such an assignment not to release either of the lessees from carrying out the terms of the lease and that the lessees would give peaceable possession of the said premises at the expiration of the lease.

In consideration of the promises and agreements on the part of the lessees the lessors agreed, in the event that the lessees carried out the terms of the agreement, that the lessees should be granted an option during the life of the agreement to purchase the property on or before December 31, 1920, for $13,500—$3,000 to be paid at the time of the exercise of the option and the balance in installments. It was further agreed that if the lessees exercised the option they should give notice thereof in writing to the lessors and at the same time make the cash payment provided for, and that if the lessees failed to comply with the provisions of the lease and the lessors elected to terminate the lease, the option should also terminate without further notice or act by the lessors. Further provisions were included relating to the giving of a deed by the lessors and the payment of an existing mortgage in case the lessees exercised the option. Finally, it was agreed that should the lessees fail to exercise the right to purchase they should execute to the lessors a deed sufficient to convey title to the lessors, "free and clear of any act or thing done, made, or suffered" by the lessees and that should suit be brought "to enforce any of the terms or conditions of this lease or for the purpose of quieting title to, or obtaining possession of, the said premises, or any portion

thereof, from the said parties of the second part . . . there
shall be allowed to the parties of the first part . . . a rea-
sonable attorney's fee to be included as a part of any judg-
ment in favor of the parties of the first part.''

By the terms of the supplementary lease the lessors agreed
to mortgage the premises for $1,400 to install a pumping
plant. The lessees agreed to purchase and install an electric
motor, which should become a part of the realty; to pay
interest on the mortgage and to pay the sum of $1,400 in
addition to the $3,000 first payment in case they should exer-
cise their option of purchase and at that time the mortgage
to install the pumping plant should be unpaid.

It was alleged in the complaint that the lease and option
expired on December 31, 1920; that no extension thereof
was granted; that no notice of their election to exercise the
option has been given by the lessees and that no payment
whatever has been made on account of the option to pur-
chase the premises; that by reason of their expiration the
lease and option have become a nullity; that it does not
appear from the records of Los Angeles County or upon the
face of the lease and option whether or not the lessees have
exercised their option to purchase the premises, have given
notice of their intention to do so, or have paid any sum for
the purchase, as provided in the option; that the defendants
are setting up some claim, the exact nature of which is un-
known to the plaintiffs, to the effect that the defendants
still have some rights under the lease and option; that the
instruments throw a cloud over the plaintiffs' title and that
there is a reasonable apprehension, and plaintiffs do appre-
hend, that if the instruments are left outstanding serious
injury may be caused to the plaintiffs; that it was necessary
for plaintiffs to employ counsel in behalf of the matters
for which it was provided in the lease reasonable counsel fees
should be allowed and that such reasonable fees for the
services in the case at bar are $1,000.

Defendant A. J. O. Korbel interposed a demurrer to the
complaint, which was overruled. Defendants Carolyn Kim-
ball and A. C. Thorpe, as administrators of the estate of
Wade H. Kimball, deceased, and Carolyn Kimball in her
own behalf, filed an answer. In it they denied that by
reason of their expiration and termination the lease and
option, or either of them, became a nullity; that they

threaten to use the lease and option vexatiously against the plaintiffs or that these documents throw a cloud over plaintiffs' title and denied that $1,000 was a reasonable attorney's fee. Further answering the complaint, it was alleged that the plaintiffs had failed to carry out and perform their part of the lease and option; that after defendants were let into possession they made improvements amounting to $1,500 which increased the value of the land more than $10,000 and paid sums totaling $1,450 to plaintiffs and $65.92 taxes; that in order to satisfy creditors of the estate of Wade H. Kimball, deceased, it was deemed necessary to sell the option rights of the estate in the premises; that on or about August 3, 1920, the plaintiffs wrongfully and forcibly entered upon the premises and took and retained possession thereof; that although defendants procured persons who were willing to buy the premises for $22,500 subject to the option rights provided upon inspection they should be found to be as represented, and although the premises were as represented, the plaintiffs prevented the buyers from inspecting the premises and stated that the estate of Wade H. Kimball, deceased, no longer had any interest in the premises; that by reason of these facts defendants had been damaged to the extent of $7,500 and plaintiffs are entitled to no relief until they offer to do equity.

In a part of the answer designated as a counterclaim similar facts were alleged and it was further stated that plaintiffs gave defendants no notice, as provided in the lease, wherein it was claimed there was any breach or failure upon the part of the lessees to perform their obligations under the contract. Defendants prayed that the option be declared to be in full force and effect for such time as the court might deem it necessary for them to sell the option rights and asked that if this could not be done they recover $7,500 and costs from plaintiffs.

A demurrer to this answer was filed but before decision thereon the entire answer was stricken from the files upon the grounds that it was sham, irrelevant, and redundant. Leave was granted to further answer within ten days but no further answer was filed. Thereupon "this cause, taken as confessed by the said defendants served with process, coming on to be heard before the court, and the court having heard evidence presented herein finds that all of the

allegations of plaintiffs' complaint are true, and that plaintiffs are entitled to judgment against the said defendants." The lease, supplementary lease, and option were declared to be terminated, null, and void and canceled of record; the defendants were declared to have no rights under the option; any cloud on plaintiffs' title growing out of the leases and option was declared removed and it was further ordered that the plaintiffs recover from defendants the sum of $600 attorney's fees and $15.20 costs, "all to be paid in due course of administration of the estate of the said Wade H. Kimball, deceased." From that judgment the defendants, except A. J. O. Korbel, take this appeal.

Appellants' first assignment of error is that the trial court erred in striking out their answer. It is insisted that as the answer was verified and no claim was made by affidavit or otherwise that it was false, and as nothing appears in the record to question its truth or its form, it could not be stricken out as sham. [1] Before it can be said the answer was properly stricken out on that ground it must appear that no defense was set up by it, for it was held in *Greenbaum* v. *Turrill,* 57 Cal. 285, 291, that a verified answer, setting up a defense, either affirmatively or by a denial of the allegations of the complaint, may not be considered sham before a trial of the issues. Therefore it is necessary only to determine whether or not a material issue was presented by the answer, for if none was, the answer was properly stricken out as irrelevant (*Felch* v. *Beaudry,* 40 Cal. 439; *Hemme* v. *Hays,* 55 Cal. 337; *Montgomery* v. *Merrill,* 62 Cal. 385; *Loveland* v. *Garner,* 74 Cal. 298 [15 Pac. 844]).

[2] In the case at bar the answer denied that the lease and option, or either of them, had become a nullity, that they threw a cloud on respondents' title or that appellants threatened to use the documents vexatiously against respondents. The first two of these denials were conclusions of law, which raised no issue and need not be considered. (*Frost* v. *Hartford,* 40 Cal. 165.) The third denial is immaterial, for section 3412 of the Civil Code provides only that "A written instrument, in respect to which there is a *reasonable apprehension* that if left outstanding *it may cause serious injury* to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered

up or canceled.'' (Italics ours). The material allegation of the complaint in this respect was that if left outstanding there was reasonable apprehension that the lease and option would cause serious injury to respondents in that appellants were setting up some claim under the instrument. Whether the appellants were using the document vexatiously or not was immaterial. If they were claiming rights under it and their claim was groundless, respondents had the right to a decree that as to them the instrument was void, whether appellants' claim was *bona fide* or for purposes of vexation. If their claim was valid it would make no difference whether it was vexatious to the respondents or not. There was no denial of any other facts stated in the complaint.

[3] The denial that $1,000 was a reasonable attorney's fee was also immaterial, the attorney's fee provided in the lease not being the cause of action, but an incident to it (*Huber* v. *Shedoudy,* 180 Cal. 311, 314 [181 Pac. 63]).

[4] The second part of the answer and the counterclaim rest upon the proposition that appellants might have sold their option rights but for the unlawful act of the respondents in taking possession of the premises before the expiration of the lease. It is claimed in this connection that although it was provided in the lease that the lessees should not assign it without the written consent of the lessors, the lease and option were severable and the option could be assigned without the lessors' consent. We do not so read the lease which, with the option, formed one document. The first part of the lease recited the obligations of the lessees, including the agreement that they would not assign it. Then followed the provisions relating to the option, the granting of which was conditioned on the faithful carrying out of the terms of the lease by the lessees and which was to run only during the term of the lease.

With reference to the option it was provided that should the conditions of the lease be performed and the option exercised by the lessees, the purchase price should be paid in installments and no deed should be given by the lessors until sixty per cent of the purchase price was paid. The option thus formed a part of the lease and was dependent on it. In view of the provisions for installment payments in case the option was exercised and that no deed should be given until sixty per cent of the purchase price had been

paid, it cannot be said the lessors intended, as to the option, to deal with anyone whom the lessees might select. The option must be held to be a part of the lease and governed by the clause that no assignment should be made except with the written consent of the lessors.

[5] It was not alleged that the lessors agreed to the transfer of the option rights to any of the purchasers which the appellants alleged they had procured. In the absence of such assent they could not sell the right to purchase the property. Therefore their claim for damages based solely on the fact that the lessors had prevented them from selling the property at a profit is without merit and presents no issue. It follows there was no error in the court's striking out the answer and counterclaim on the ground they were irrelevant.

Appellants further contend that inasmuch as the lease provided for a notice to be given by the lessors in the event of a breach of the lease by the lessees and for the giving of a deed by the lessees in case they did not exercise their option of purchase, the lessees were entitled to a notice and demand for the deed before the lessors became entitled to bring this action. There is no allegation in the complaint that any such notice was given or demand made and it is insisted by appellants that because of this fact it affirmatively appears respondents are entitled to no relief in this suit and that the complaint fails to state a cause of action. [6] Although it appears from the record that no such contention was made by appellants in the trial court, no demurrer having been filed, this point is one which may be raised at any time during the proceedings (Code Civ. Proc., sec. 434; *Ryan* v. *Holliday,* 110 Cal. 335 [42 Pac. 891]; *Flood* v. *Templeton,* 148 Cal. 374 [83 Pac. 148]).

The case here differs from one brought before the making of a demand to recover money or enforce the performance of an obligation, in that here the execution of the deed, for which it is claimed the demand should have been made, is not the thing sought in the action. The contention is that had respondents pursued another remedy appellants would not have been subjected to the annoyance and expense of a suit. [7] However that may be, it is settled that a demand is unnecessary where it appears it would be unavailing (*Cox* v. *Delmas,* 99 Cal. 104, 120 [33 Pac. 836]; *California Cured*

*Fruit Assn.* v. *Stelling,* 141 Cal. 713, 719 [75 Pac. 320]).
[8] In this case it is alleged in the complaint that appellants were setting up some claim of right under the lease and option. Such a fact would be entirely incompatible with a willingness to give a quitclaim deed to the premises. In addition, these appellants in their answer set forth their claim and asked a decree that they be allowed to exercise the option. Under such circumstance a demand for a deed would obviously have been fruitless.

[9] There remains to consider the action of the court in allowing counsel fees. Under the lease reasonable attorney's fees were to be allowed in case suit should be brought to enforce any of the terms of the lease or for "quieting title to, or obtaining possession of, the said premises." This action is not brought to enforce any term of the lease or to obtain possession of the premises. Nor, in our opinion, is it an action to quiet title. Although one result of an action to cancel an instrument may be to remove a cloud from title, there is a well-recognized difference between such an action and one to quiet title. Thus in *Castro v. Barry,* 79 Cal. 443 [21 Pac. 946], it was pointed out that suits to have an instrument canceled or adjudged to be void were quite common in the old chancery practice and were preserved in section 3412 of the Civil Code, while suits to determine adverse claims, or to quiet title, were unknown to the old chancery practice but were provided for by statute and carried into section 738 of the Code of Civil Procedure. (See, also, Code Civ. Proc., sec. 749.) The court there said: "The distinction between the two kinds of action is clear. They are different not merely in form (for we have no forms of action in the common-law sense), but in purpose. In the former case the proceeding is aimed at a particular instrument, or piece of evidence, which is dangerous to the plaintiff's rights, and which may be ordered to be destroyed in whosesoever hands it may happen to be. While in the latter, the proceeding is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property, whether such claim be founded upon evidence or utterly baseless. It is not aimed at a particular piece of evidence, but at the pretensions of an individual." (See, also, *Angus* v. *Craven,* 132 Cal. 691, 697 [64 Pac. 1091].)

The leases were evidently drawn with care and it cannot be said the rights of the lessors were not fully safeguarded. Attorney's fees were provided for only in the cases enumerated and actions to quiet title were expressly included. In view of the marked difference between such actions and the one at bar it must be held this is not an action in which respondents are entitled to recover attorney's fees from appellants.

[10] Appellants object to the provision of the judgment that plaintiffs recover attorney's fees and costs from all of them, but "all to be paid in due course of administration of the estate of the said Wade H. Kimball, deceased." However, in our opinion, this clause could only have reference to such portion of the total amounts as were collectible from the estate and was not a direction that the whole judgment be collected from it.

The judgment as to the appellants herein is modified by striking therefrom the portion providing for a recovery of attorney's fees and as so modified is affirmed, each party to pay his own costs on appeal.

Myers, J., Waste, J., Lennon, J., Wilbur, C. J., Seawell, J., and Kerrigan, J., concurred.