[Civ. No. 24286.   Second Dist., Div. Three.   Aug. 19, 1960.]

Estate of THOMAS W. WARNER, Deceased. NETTIE M. WARNER et al., as Surviving Trustees, etc., Appellants, v. JEAN M. WARNER et al., as Executors, etc., Respondents.

Rinehart, Merriam, Parker & Berg and Jay D. Rinehart for Appellants.

Marvin M. Chesebro and Jerome J. Mayo for Respondents.

FORD, J.—This is an appeal by the surviving trustees of a trust established by the will of Thomas W. Warner from an order which determined the persons to whom principal

and income of the trust should be distributed following the death of the life beneficiary, Thomas W. Warner, Jr.

The pertinent facts, stated in chronological order, are as follows: 1. Thomas W. Warner, Sr., died on December 2, 1947, leaving a will which provided for several trusts, the one herein involved being known as Trust Fund Number 2 in which the life beneficiary was Thomas W. Warner, Jr., the son of the testator. 2. On July 10, 1950, in an action brought against Thomas W. Warner, Jr., by his wife, a decree of separate maintenance was entered. That decree contained a provision that ''so long as the payments required to be made, or which may become payable under this decree and judgment, or any further orders of this Court, or which have become payable under any orders heretofore made, remain unpaid, that security shall be given by defendant Thomas William Warner, Jr. to plaintiff Anita Lipton Warner in the following manner: 1. That a lien be impressed upon . . . (c) All right, title and interest of defendant Thomas William Warner, Jr. as heir, beneficiary, legatee, devisee, or otherwise, in or under the estate of Thomas William Warner, Sr., deceased, which estate is in process of probate . . . and under that certain Trust No. 2, designated, described and created under the last will and testament of said Thomas W. Warner, deceased, which will has been admitted to probate in said estate.'' That decree contained a further provision: ''That defendant Thomas William Warner, Jr., . . . be, and they hereby are, enjoined and restrained (other than for the purpose of satisfying, paying and discharging the obligations of providing maintenance and of making the payments required to be made by him under said orders and judgment) from receiving the corpus or income or any beneficial or distributive share . . . in or under the estate of Thomas William Warner, Sr., deceased . . . or in or under that certain Trust No. 2, designated, described and created under the last will and testament of said Thomas William Warner, Sr., deceased; and that . . . the trustees and the attorneys for the trustees of said Trust No. 2 be, and they hereby are, enjoined and restrained from paying, turning over or delivering to defendant Thomas William Warner, Jr., the corpus or income on any beneficial or distributive share of said defendant in or under said . . . trust, except upon express order of the Court therefor made after notice to plaintiff, or except upon order of Court which is based upon stipulation therefor hereafter made by plaintiff and defendant in this action.'' 3. On May 23, 1952, Thomas

W. Warner, Jr., obtained an order to show cause addressed to the plaintiff in the separate maintenance action. Thereby he sought to be relieved of the obligation to pay his wife the sum of $600 per month theretofore ordered, or any sum whatsoever, for her support and maintenance, and to discharge the lien impressed upon his assets, including his interest under Trust Number 2. In his affidavit in support of his application, he stated that he had "complied with the said orders of the Court in every material respect." He further asserted that his "capital position is now less than 50% or approximately Two hundred thirty-seven thousand ($237,000.00) Dollars less" when compared with what it was when the orders were made, and that his annual income had decreased in that period of .time from $31,015.54 to approximately $18,957.01 as estimated for the then current year. He further stated that he was not able to work because of his physical condition and that his current income "which he will receive during the course of the year 1952 . . . is insufficient to cover affiant's living or other expenses" in certain particulars, such deficiency being in the amount of $5,158.61. On November 19, 1952, his application was denied. 4. On February 18, 1953, in the estate of Thomas W. Warner, deceased, the decree of distribution was signed and filed with the clerk of the court. Thereby the residue of the estate was distributed to Nettie M. Warner, Thomas W. Warner, Jr., and Jean Warner Sprague, as trustees. The provisions of the will which were incorporated in the decree of distribution included those relating to Trust Fund Number 2 to which was allotted one-quarter of the trust estate. As to Trust Fund Number 2, pertinent provisions were as follows:

"I direct that the net income received and derived from said Trust Fund No. 2, and available for distribution shall, by my Trustees be paid over and distributed unto my son, Thomas W. Warner, Jr., during his lifetime, provided that such distribution shall be made in monthly or other convenient installments during the calendar year following the receipt of the income.

"During his lifetime and during the continuance of said Trust Fund No. 2, my son, Thomas W. Warner, Jr., shall also have the right to withdraw the portions of the trust estate hereinafter designated, and I direct that my said Trustees shall, upon the written demands of my son, Thomas W. Warner, Jr., presented from time to time, pay over and distribute to him, in cash or in kind, portions of said fund,

(as originally apportioned, or as later augmented) not exceeding the following designated portions thereof:

"1. One-fourth of the corpus of said Trust Fund No. 2 immediately upon distribution or apportionment to the Trustees, as a part of said fund or at any time subsequent thereto;

"2. An additional one-quarter of said Fund five (5) years after the date of such distribution thereof or apportionment to the Trustees, or at any time subsequent to that date; and

"3. An additional one-fourth of the corpus of said fund ten (10) years after the date of such distribution or apportionment thereof to the Trustees, or at any time subsequent to that date.

"Upon the death of my son, Thomas W. Warner, Jr., one-fourth of the corpus of the trust fund as originally apportioned for his benefit or as later augmented shall, by my Trustees, be paid over and distributed in equal shares per stirpes, to and among the then living issue of my son, Thomas W. Warner, Jr., and that the residue of said fund shall go to augment and become a part of the Trust Fund No. 3."[1]

---

[1]Pertinent provisions with respect to Trust Funds No. 1 (one-half of residue of estate) and Trust Fund No. 3 (one-quarter of residue of estate) were: "I direct that the net income received and derived from said Trust Fund No. 1 and available for distribution shall, by my Trustees, be paid over and distributed unto my wife, Nettie M. Warner, during her lifetime, provided that such distribution shall be made in monthly or other convenient installments during the calendar year following the receipt of income.

"Upon the death of my wife, Nettie M. Warner, said Trust Fund No. 1 shall go to augment equally Trust Fund No. 2 and Trust Fund No. 3 and in equal shares or proportions shall become parts of said trust funds. . . .

"I direct that the net income received and derived from said Trust Fund No. 3 and available for distribution shall, by my said Trustees, be paid over and distributed unto my daughter, Jean Warner Sprague, during her lifetime, provided that such distribution shall be made in monthly or other convenient installments during the calendar year following the receipt of the income.

"During her lifetime, and during the continuance of said Trust Fund No. 3 my daughter, Jean Warner Sprague, shall also have the right to withdraw the portions of the trust estate hereinafter designated, and I direct that my said Trustees shall, upon the written demands of my daughter, Jean Warner Sprague, presented from time to time, pay over and distribute to her in cash, or in kind, portions of said fund not exceeding the following designated portions thereof:

"1. One-fourth (¼) of the corpus of said Trust Fund No. 3 immediately upon distribution or apportionment thereof to the Trustees, as a part of said fund or at any time thereafter;

"2. An additional one-eighth (⅛) of said fund five (5) years after the date of such distribution or apportionment thereof to the Trustees, or at any time thereafter;

"3. An additional one-eighth (⅛) of said fund ten (10) years after

The decree of distribution also incorporated a provision of the will relating to the trusts which is as follows:

"Income accrued and undistributed at the time of the termination of any interest or estate hereunder, shall belong and go to the beneficiary or beneficiaries entitled to the next eventual estate in the same proportion as the principal thereof." 5. On May 13, 1955, Thomas W. Warner, Jr., died. It was stipulated that Thomas W. Warner, Jr., did not at any time make a written or oral demand on the other two trustees for any part of the corpus of Trust Fund Number 2. 6. Thereafter, on June 2, 1958, the surviving trustees of Trust Fund Number 2 filed their first and final account and their petition for a decree terminating the trust and directing the final distribution of the trust assets. Two of the matters thereby presented form the basis of those portions of the order which are questioned on this appeal.

The problem which will be first considered relates to an item of income in the amount of $743.85. The net income for 1954, the year preceding the death of the younger Warner, was $1,115.77. Inasmuch as the provision of the trust with respect to the disbursement of the income to that beneficiary was that "such distribution shall be made in monthly or other convenient installments during the calendar year following the receipt of the income," the trustees had divided the income of $1,115.77 into twelve monthly installments of $92.98 and had paid four installments, or $371.92, to Warner, Jr., before his death. This left a balance of $743.85, which the court determined to be payable to the executors of the estate of Thomas W. Warner, Jr., deceased.

The second problem presented is the matter of whether the

the date of such distribution or apportionment thereof to the Trustees, or at any time thereafter; and

"4. An additional one-fourth (¼) of said fund fifteen (15) years after the date of such distribution or apportionment thereof to the Trustees, or at any time thereafter.

"Upon the death of my daughter, Jean Warner Sprague, one-fourth (¼) of the trust fund as originally apportioned for her benefit or as later augmented shall, by my Trustees, be paid over and distributed in equal shares, per stirpes, to and among the then living issue of my daughter, Jean Warner Sprague, and that the residue of said fund shall go to augment and become a part of the said Trust Fund No. 2."

It was further provided: "Upon the death of the survivor of my wife, Nettie M. Warner, my son, Thomas W. Warner, Jr., and my daughter, Jean Warner Sprague, I direct my Trustees to dissolve and terminate the Trust Fund then in existence and distribute the accumulated income and corpus thereof unto the then living issue of my son, Thomas W. Warner, Jr., and of my daughter, Jean Warner Sprague, per stirpes and not per capita."

852

executors of the estate of Thomas W. Warner, Jr., deceased, were also entitled to one-quarter of the assets which constituted the corpus of Trust Fund Number 2. The court below held that they were. Such determination was based on the conclusion that "the right of Thomas W. Warner, Jr., to one-quarter of Trust Fund No. 2 at the date of entry of the Probate Decree of Distribution in the above entitled estate, became and was a vested right at and upon the death of his father, the decedent, Thomas W. Warner, and that it is true that possession only of said one-quarter was postponed until the date of distribution of said estate," and the further conclusions that such right of Warner, Jr., "was not forfeited by his failing to hand a written demand therefor to the trustees" but "that the application of Thomas W. Warner, Jr., for Order to Show Cause filed on May 23, 1952 in the Superior Court in a separate maintenance action, was a demand for possession of all that to which he was then entitled under Trust Fund No. 2."

With respect to the questions thus presented, the principles which must guide this court are succinctly stated in *Union Nat. Bank* v. *Hunter,* 93 Cal.App.2d 669, at page 673 [209 P.2d 621] : "The question for decision is which of these solutions should be followed. The answer depends, ultimately, upon the intention of the trustor as manifested by the language of the trust instrument. (1 Scott on Trusts, § 143, p. 718; *Moxley* v. *Title Ins. & Trust Co.,* 27 Cal.2d 457, 462 [165 P.2d 15] ; 25 Cal.Jur. § 145, pp. 286-287.)    Since the trial court's decision was based solely on the terms of the written instruments, the issue is one of law upon which this court is required to make its independent determination. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ; *First Trust & Sav. Bank* v. *Costa,* 83 Cal.App.2d 368, 372 [188 P.2d 778].)'' (See also *Estate of Welch,* 83 Cal.App.2d 391, 396 [188 P.2d 797].)

There was no error with respect to the item of $743.85. The right of Warner, Jr., to the net income for the year preceding his death had become vested; payment merely and not ownership was postponed until the year 1955. (See *Estate of Lockhart,* 21 Cal.App.2d 574, 580 [69 P.2d 1001] ; *Union Safe Deposit & Trust Co.* v. *Dudley,* 104 Me. 297, 311-312 [72 A. 166, 172] ; 4 Bogert on Trusts, § 816, pp. 235-236.) This conclusion is not undermined by the language of the general provision that: "Income accrued and undistributed at the time of the termination of any interest or estate hereunder, shall belong and go to the beneficiary or beneficiaries entitled

to the next eventual estate in the same proportions as the principal thereof." The specific clause with respect to Trust Fund Number 2 makes reference to "the net income received and derived from said Trust Fund No. 2 and available for distribution." The general clause is directed to the subject of income as to which rights had accrued in the trustees but which could not be said to be then "available for distribution." It refers to "accrued" income whereas the specific provision refers to "net income received and derived . . . and available for distribution." As stated in *Estate of Lockhart, supra,* 21 Cal.App.2d 574, at page 580: "Since the bequest was of net income received or derived, the widow was only entitled to such income after its receipt. (*Estate of Brown,* 143 Cal. 450 [77 P. 160].) Since the net income, when received, was to go to the widow, her right thereto vested immediately on its receipt, although payment was to be made semi-annually. (*Estate of Blake, supra* [157 Cal. 448 (108 P. 287)].) Her administrator was entitled to the income which was received by the trustee but which was not paid to her during her lifetime. (*Welch* v. *Apthorp,* 203 Mass. 249 [89 N.E. 432, 27 L.R.A.N.S. 449] ; *Union Safe Deposit & Trust Co.* v. *Dudley,* 104 Me. 297 [72 A. 166].) He is not, however, entitled to income which the trustee collected after her death." The reasoning in *Estate of Baldwin,* 69 Cal.App.2d 760 [160 P.2d 124], lends support to such harmonious construction of the two provisions. It was there said, at page 766: "There is nothing ambiguous in the language of the trust instrument here under consideration, it appearing to be the intention of the testator that the *entire net income available for distribution* should be divided between his widow and his son and paid to them during their joint lives; that upon the death of the son, *the entire net income* (available for distribution) should be paid to the widow; that upon the death of the widow, at which time the trust would terminate, *the corpus of the trust estate together with the undistributed income* should be paid over to the son, if living, and if he were not living, then *such corpus and undistributed income* should be distributed to the granddaughter. (Emphasis added.)

"The accepted meaning of 'distribute' is to divide among several or many; to deal out, apportion, allot. (Webster's New International Dictionary (2d ed.).) Undistributed therefore means not apportioned, not dealt out, not allotted.

"While the dividend in question had been declared and was payable as of July 1, 1943, it was not available for distribution

as income until it was paid to the successor trustee on November 24, 1943. Prior to that date the trust estate had terminated and the trustee had died, and as a result the dividend was then payable to appellant as undistributed income, according to the terms of the trust instrument.''

Such interpretation of the language of the testator as embodied in the decree of distribution is in harmony with the statement of the governing principle as found in *Estate of Johnston,* 47 Cal.2d 265, at page 269 [303 P.2d 1] : ''A will must be read as a whole, and all parts thereof must be construed together in relation to each other to form, so far as possible, a consistent whole.'' (See also *Estate of Northcutt,* 16 Cal.2d 683, 689 [107 P.2d 607] ; *Estate of Hampton,* 165 Cal.App.2d 255, 258 [331 P.2d 778].)

With respect to the second problem presented on this appeal, it is the position of the respondents that the language of the trust created a vested right in Warner, Jr., with respect to one-quarter of the corpus of Trust Fund Number 2.

As stated in *Estate of Welch,* 83 Cal.App.2d 391, at page 396 [188 P.2d 797] : ''While precedents may be looked to for the general principles which have been established, it is well recognized that a case involving the determination of a testator's intention as expressed in his will is one which, to a large extent, must depend upon its own peculiar facts. (*Estate of Lawrence,* 17 Cal.2d 1 [108 P.2d 893].) A will must be construed in accordance with the intention of the testator (Prob. Code, § 101), and this is the paramount rule (*Estate of Lawrence, supra*). It is well settled that the will and the entire scheme of disposition of the testator's property should be viewed as a whole, and the words used should be considered in reference to the context and construed according to their surroundings. (*Estate of Franck,* 190 Cal. 28 [210 P. 417].) A construction favorable to testacy should obtain where the language used reasonably admits of such construction. (*Estate of Wallace,* 11 Cal.2d 338 [79 P.2d 1094].) Several presumptions are provided by statute or are well established by the decisions. Testamentary dispositions, including a devise to a person on attaining his majority, are presumed to vest at the testator's death. (Prob. Code, § 28.) The law favors the vesting of interests and a presumption in favor of such vesting will prevail unless an intention to the contrary clearly appears in the will. (*Estate of Newman,* 68 Cal.App. 420 [229 P. 898] ; *Estate of Ritzman,* 186 Cal. 567 [199 P. 783].) In speaking of words which raise some doubt in this regard but

which are used as a part of some other provision the court said, in *Estate of Ritzman,* 'Such words so used are usually taken as in no way indicative of an intent to postpone the vesting in right, and "as relating to the time of taking effect in possession and not to the time of taking effect in interest." ' "

The difficulty with the contention of the respondents, at least as to the period of time prior to the decree of distribution, is that it would also logically lead to the conclusion that Warner, Jr., had a vested interest, with possession alone deferred, in the one-quarter of the fund which Warner, Jr., could have demanded "five (5) years after the date of such distribution thereof or apportionment to the Trustees," and in the one-quarter of the corpus as to which he could have made a demand 10 years after such distribution or apportionment. But the testator could hardly have intended a vested interest of that nature because he contemplated that upon the death of Warner, Jr., more than one-quarter of the corpus of Trust Fund Number 2 might be available for further disposition. This is evidenced by the language that: "Upon the death of my son, Thomas W. Warner, Jr., one-fourth of the corpus of the trust fund as originally apportioned for his benefit or as later augmented shall, by my Trustees, be paid over and distributed in equal shares per stirpes, to and among the then living issue of my son, Thomas W. Warner, Jr., *and that the residue of said fund shall go to augment and become a part of the Trust Fund No. 3."* (Emphasis added.)

The fact that Warner, Jr., survived "distribution or apportionment . . . to the Trustees" does not appear to be, in and of itself, sufficient to lead to the conclusion that the interest of Warner, Jr., in one-quarter of the corpus of Trust Fund Number 2 had ripened into full ownership. It is to be noted that he had "the right to withdraw . . . not exceeding the following designated portions thereof," a provision which meant that, at his election, Warner, Jr., could withdraw any part or all of one-fourth of the corpus upon distribution or apportionment thereof to the trustees. Another factor which supports a conclusion contrary to the position of the respondents is that the ripening of the right to make a demand is not tied down to a particular point in time. Instead, an indefinite period of time in which Warner, Jr., could make his election is found in the words "immediately upon distribution or apportionment thereof to the Trustees . . . or at any time subsequent thereto." What Warner, Jr., had was not a vested interest of the nature found by the court below but rather

a power of invasion of the corpus of the trust.[2] Moreover, it would appear to be reasonable to conclude that the testator contemplated that Warner, Jr., might desire to forego the election and leave the management of all the corpus to the trustees, of which he was one, particularly since the major asset to be held in trust consisted of shares of the capital stock of T. W. Warner Company. Furthermore, as noted in footnote 1 to this opinion, upon the death of the survivor of Warner, Jr., his mother and sister, the "Trust Fund then in existence" would be terminated and the accumulated income and corpus thereof distributed "unto the then living issue of my son, Thomas W. Warner, Jr., and of my daughter, Jean Warner Sprague, per stirpes and not per capita." Thus, ultimately the son of Warner, Jr., would be benefited if he survived the other persons above-named. Accordingly, we have reached the conclusion that Warner, Jr., at the time of his death, had no vested interest in one-fourth of the corpus of Trust Fund Number 2 of a nature which would entitle his estate to succeed thereto and to receive such part of the corpus, unless it can be said that either Warner, Jr., made in his lifetime a sufficient demand within the terms of the trust or that such a demand was excused under the circumstances of this case because it would have been futile.

It has been noted that the pertinent provision was not that one-fourth of the corpus of the Trust Fund Number 2 would go and be transferred to him "immediately upon distribution or apportionment thereof to the Trustees." What he was given, upon the happening of such event, was "the right to withdraw the portions of the trust estate hereinafter designated . . . upon the written demands of . . . Thomas W. Warner, Jr., presented from time to time. . . ." It is clear

---

[2]In *Hackensack Trust Co.* v. *Bogert*, 19 N.J. Super. 124 [88 A.2d 14] (later modified as to a matter not here pertinent, 24 N. J. Super. 1 [93 A.2d 402]), a provision of the trust was as follows: "At any time after my said grandson arrives at the age of thirty years, my Trustee hereinafter named, or its successor or successors shall, upon the written request of my said grandson, pay over to him a sum or sums out of the principal of said part or share, not exceeding in the aggregate fifty per cent of the principal of said part or share. In case of any such payment or payments, the receipt of my grandson shall absolutely acquit and discharge such Trustee from all liability therefor."

The grandson, having arrived at the age of 30 years, sent a letter to the trustee in which he stated that he requested that there be paid to him fifty per cent of the principal of the trust fund. Thereafter, after receiving some payments, the grandson died. The court referred to the right of the grandson as a "power of invasion of the corpus of the trust" and held that the exercise thereof had been completed and that the required release could be given by the executrix of the grandson.

that a written demand upon the trustees was contemplated. Neither an oral nor a written demand was so made. The attempt of Warner, Jr., to modify the decree of separate maintenance did not suffice. While it is true that the title of the trustees vested as of the date of the death of Thomas W. Warner, Sr. (*Estate of Platt,* 21 Cal.2d 343, 347 [131 P.2d 825]), the property was not distributed to the trustees prior to February 13, 1953, whereas the order to show cause in the separate maintenance action was obtained by Warner, Jr., some months before, on May 23, 1952, and that matter was determined on November 19, 1952. We do not pass upon the question of what the effect of a written demand on the trustees prior to their receipt of the trust property would have been. But we do mention the time element as indicating that, at the most, Warner, Jr., was attempting to place himself in a position to receive net income available for distribution or to submit whatever demand for a portion of the corpus he might see fit to make, when the trustees should obtain possession of the trust assets, and thereupon to receive such income or the portion of the corpus so demanded. In his affidavit in support of the order to show cause, he made no specific statement as to what part or portion of the trust monies or other property he desired to make available to himself. It would appear that there was income accumulated from the date of the death of the testator in a substantial amount which would be available for distribution (see *Estate of Hyland,* 58 Cal.App.2d 556, 558 [137 P.2d 73]) so that resort to the corpus was not inevitable. The accounting of the trustees shows that they received as a result of the decree of distribution in the estate of Warner, Sr., "income cash . . . accrued for account of T. W. Warner, Jr.," in the sum of $19,191.76. Thereafter, until the death of Warner, Jr., the disbursements of income were in the amount of $15,386.52[3] and consisted mainly of payments of $600 per month to the wife of Warner, Jr., for a period of 25 months.[4] The first of such payments was made on April 30, 1953. Consequently, it cannot be said that even by implication the application for relief made by Warner, Jr., in the separate

[3]In the proceedings which form the basis of the present appeal, the remaining balance of such income was ordered distributed to the executors of the estate of Thomas W. Warner, Jr., deceased, and no attack is made upon that portion of the court's determination.

[4]By the decree of separate maintenance, Warner, Jr., was ordered to pay to his wife, "for her permanent support and maintenance . . . the sum of $600.00 per month [in addition to other provisions]. . . ."

maintenance action constituted a demand for part of the corpus within the terms of the trust. Furthermore, the function of a written demand would be to evidence the election of Warner, Jr., to withdraw a portion of the corpus of the trust. The separate maintenance decree did not enjoin him from submitting such a written demand with payment thereunder being made conditional upon the event of the discharge of the lien and the removal of the restraint upon payment contained in that decree.

In the absence of a written demand on the trustees by Warner, Jr., there is no basis for a claim on behalf of the executors of the estate of Thomas W. Warner, Jr., to one-quarter of the corpus of the trust. In the case of *In re Doerfler's Will,* 247 Wis. 629 [20 N.W.2d 549], there was a provision in a codicil that the testator's wife ''shall be authorized to use so much of the principal as to make her gross income per annum Six Thousand Dollars.'' Provision was made for trusts for others after her death. The executor of her estate, in preparing the final account of the trust estate of her deceased husband showing the widow's administration of the trust as trustee thereof, made claim on behalf of her estate for the difference between the income plus principal used by her and $6,000 per year for the 10-year period that she lived after her husband's death. The difference was in the amount of $18,655.07. In holding that such claim was without merit, the Supreme Court of Wisconsin said (20 N.W.2d, at p. 550): ''It is considered that by his will and codicil testator authorized the widow to use so much of the principal of the trust as to make her gross income per annum $6,000, but the widow and her estate were, and are, entitled only to the money which the widow withdrew during her lifetime.'' So, likewise, in the case presently before this court, the rights of Warner, Jr., and of his estate were, and are, measured by the requirement that he make a written demand for a part of the corpus before his right to possession and full ownership thereof, free of the trust, could mature.

The order which is denominated ''Order Settling First and Final Account of Trustees of Trust Fund No. 2, Authorizing Abandonment of Worthless Assets, Allowance of Attorney's Fees, Findings, and Decree Terminating Trust No. 2 and Directing Final Distribution of Trust No. 2,'' is affirmed with the exception of the portion thereof which orders and decrees distribution to Jean M. Warner and Manuel Ruiz, Jr., as co-executors of the estate of Thomas W. Warner, Jr., deceased,

of one-quarter of the assets constituting the corpus of Trust Fund Number 2 and the income therefrom received by the trustees after the death of Thomas W. Warner, Jr. The excepted portion thereof, as stated in this paragraph, is reversed with directions to the trial court to enter its order and decree with respect thereto in accordance with the views herein expressed. Each party will bear his or her own costs on appeal.

Vallée, J., concurred.

SHINN, P. J.—I dissent.

I cannot agree to an interpretation of the will which would defeat the purposes of the testator as I understand them. It is clear to me that the purpose of Warner, Sr., was that there should vest in his son interests in the trust estate as to one-fourth thereof if he survived distribution to the trustees, one-fourth thereof five years thereafter and one-fourth ten years thereafter. This purpose should not be defeated by mere vagueness or ineptitude of expression.

I take it that one who has given to another the right to take and use for himself specific property without restriction or limitation has given the latter that property. Certainly no one could have taken away the right of Warner, Jr., to take and use the interest as he saw fit. The direction to the trustees that they should pay over and distribute to the son portions of the fund, which would include the whole of it until it was exhausted, was superfluous. They would have had that duty anyway. I construe this direction as mere legal tautology and not in any sense a condition to the vesting of ownership. Although one may have full ownership of property he may not be entitled to possession until he has demanded it; but the right to immediate possession should not be confused with ownership.

I cannot permit the unfortunate use of unnecessary and meaningless language to influence my belief as to the intentions of the testator. I believe there were conditions attached, namely, that as to one-quarter interest, the son should survive distribution to the trustees, and that as to the other quarter interests, it was not intended that title should vest unless the son should be living at the respective dates, namely, five years and ten years after distribution.

The son's interest was an entire present ownership from

the time of distribution, unless it was subject to some clearly expressed restriction or limitation. If the testator had desired that there should be less than absolute ownership he would have expressed that desire in his will. A customary method is to permit the withdrawal of portions of the corpus of trust property in stated circumstances, or for particular purposes, or in the discretion of the trustee. The statement that the trustees should pay over and distribute whatever of the share was demanded was clearly not one which qualified or was intended to qualify the son's complete ownership.

If the son's ownership came into existence only with the duties of the trustees to pay over and distribute to him upon his demand and as a result of a demand then I say that neither in law nor equity should his right be forfeited by the absence of a demand for its enforcement, when such a demand would have been utterly useless and ineffective. To say that the son and his estate lost all interest in the fund because he did not demand of the trustees something that they were restrained from doing, and could not do, is as unreasonable as it is unjust.

Although I do not agree that the vesting of the one-fourth interest was conditioned upon the making of a demand, I do believe that as between the son and the trust estate whatever was necessary, if indeed anything was necessary, should be regarded as having been done when nothing whatever remained to be done except to make a demand which could not be complied with. (*Allan* v. *Guaranty Oil Co.,* 176 Cal. 421 [168 P. 884]; *Prichard* v. *Kimball,* 190 Cal. 757 [214 P. 863]; 1 Cal.Jur.2d 605-606.)

I do not find support for the majority view in the provision that upon the death of the son one-fourth (the final one-fourth) of the trust should go to his then living issue "and that the residue of said fund shall go to augment and become a part of trust fund No. 3." As I have previously stated, it is my view that the son would have to survive distribution for the respective periods of five and ten years before he would be vested with the interests which would be distributable to him at those times. In the event of his earlier death these shares would represent "the residue of said fund" that would go into trust fund Number 3.

Finally, I am of the opinion that the cases relied upon by the majority for their interpretation of the will do not support it. Constructions placed by other courts upon wills containing patently different testamentary schemes, expressed in different

phraseology, do not aid me in the interpretation of Mr. Warner's will.

I would affirm the order and decree.

Respondents' petition for a hearing by the Supreme Court was denied October 13, 1960.