[Civ. No. 20011.   Second Dist., Div. Two.   May 18, 1954.]

EDWARD J. KILFOY et al., Respondents, v.
CATHERINE FRITZ, Appellant.

Louis J. Euler and George W. Rochester for Appellant.

Freston & Files, John B. Petermann and Meredith L. Campbell for Respondents.

McCOMB, J.—This action was instituted for the purpose of recovering for the estate of John Fritz a large sum of money and securities which came into the possession of appellant during the last months of decedent's lifetime and which appellant claims to be a gift to her.

*Facts:* John H. Fritz died on the morning of October 1, 1949, at the age of 85 years. He had been failing for some time and had been seriously ill for a considerable period. In February of 1946, appellant, his niece, came to live with him. She was paid $25 per week for her services plus her room and board. She remained as his nurse, companion and housekeeper from that time until the date of his death.

During the period prior to decedent's death and immediately thereafter she came into possession of large sums of currency and government bonds, which, with a balance in a bank account, amounted to in excess of $55,000.

The trial court rendered judgment against appellant for the aggregate sum of $19,046.46, which was a portion of the cash and property which had come into appellant's possession.

The judgment represented three different items: (1) the sum of $9,889.89, which had been on deposit in a bank account at the time of decedent's death; (2) bonds of the value of $6,750; and (3) currency aggregating $2,406.25.

■ *Questions:* First: *Did the trial court err in receiving evidence to show (1) the ownership of money, and (2) the intent with which it was deposited in the joint bank account of decedent and appellant?*

*Yes.* On October 11, 1947, appellant and decedent opened a joint bank account with the Security-First National Bank of Los Angeles. The contract provided that upon the death of either the survivor should have vested title to all monies remaining in the joint account.

At the time this bank account was opened, section 15a of the Bank Act (1 Deering's Gen. Laws, 1937, Act 652) read in part as follows:

"Joint deposits. When a deposit shall be made in any bank by any person or persons whether minor or adult in the names of such depositor or depositors and another person or persons, and in form to be paid to any of them or the survivor or survivors of them, such deposit and any additions thereto made by any such persons after the making thereof, shall become the property of such persons as joint tenants, and the deposit together with all dividends or interest thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetime or to the survivor or survivors after the death of one or more of them, and such payment and the receipt or acquittance of the person or persons to whom such payment is made shall be valid and sufficient release and discharge to such bank for all payments made on account of such deposit prior to the receipt by such bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, *be conclusive evidence,* in any action or proceeding to which either such bank or the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

The trial court correctly found, supported by substantial evidence, that there was no fraud or undue influence in the relationship between appellant and decedent. Therefore section 15a of the Bank Act was applicable to the joint bank ac-

count which the parties had created, and there was a conclusive presumption that the money deposited in such account was done so with the intent of vesting title to such deposit and any additions thereto in the survivor of the parties who had established the account. (*Paterson* v. *Comastri*, 39 Cal.2d 66, 73 [9] et seq. [244 P.2d 902].)

Respondents' contention is not sound that section 15a of the Bank Act, *supra*, was repealed so far as the facts of this case are concerned by section 852 of the Banking Code, which was in effect at the time of the death of decedent, and which did not contain the former provisions of section 15a of the Bank Act establishing a conclusive presumption as to the right and interest of the surviving party to a joint bank account. Though it is true that section 852 of the Banking Code became effective at midnight on October 1, 1949, and that decedent did not die until 2 a. m. on October 1, 1949, it is the law that that which is implied by law becomes as much a part of a written contract as that which is therein expressed. (*Southern Pac. Mill Co.* v. *Billiwhack Stock Farm, Ltd.*, 50 Cal.App.2d 79, 83 [2] [122 P.2d 650].) Thus section 15a of the Bank Act became a part of the joint tenancy contract entered into by appellant and decedent on October 11, 1947. (*Paterson* v. *Comastri*, *supra*, p. 72 [6]; *Wallace* v. *Riley*, 23 Cal.App.2d 654, 666 [6] [74 P.2d 800].)

Moreover the decisions of the appellate courts of this state interpreting statutes applicable to a contract are part of such contract (*Blair* v. *Williams*, 86 Cal.App. 676, 681 [4] [261 P. 539]; also the death of one joint tenant causes the previous concurrent interest of the survivor to ripen without anything more, and his sole ownership of the whole is *not by descent* but by the fact of survivorship. (*Wallace* v. *Riley*, *supra*, p. 662.)

Applying the foregoing rules to the case at bar it is clear that section 15a of the Bank Act having become an integral part of the contract creating the joint tenancy there was a conclusive presumption that the funds therein belonged to the survivor in the absence of a finding of fraud or undue influence, and that appellant took such sum as a survivor free of any claim of decedent, his heirs or executors, and that appellant did not take such fund by way of descent. Thus, rules applicable to property taken by descent are not here in point.

The result is that the trial court erred in admitting parol evidence to show the funds in the bank account were placed there in trust and for the benefit of decedent, and finding

No. IV\* of the trial court is thus not supported by the evidence and the judgment as to such sum is contrary to the law. The trial court should have awarded the entire bank account in the sum of $9,889.98 to appellant.

■ Second: *Were the following findings supported by the evidence?*

"Finding No. VI. That on or about June 1, 1946, the decedent, John H. Fritz, placed in the possession of defendant a package containing United States Treasury Bonds having a face value of $27,000 that said decedent, at the time of delivering said bonds to defendant, was competent to dispose of his property; that at the time of said delivery decedent instructed defendant that 75% of said bonds were for her, and that 25% were 'for charity for the poor and education.' That at the time of so delivering said bonds; the decedent intended to make a gift of 75% thereof to the defendant, a gift which she accepted, and he intended that she be his agent in giving away to others, as charitable gifts for the poor and for education, bonds or proceeds of bonds, amounting in value to 25% of said sum of $27,000, that is, to the sum of $6,750.

"Finding No. VII. That thereafter defendant cashed $13,000 of said bonds, for her own use and purpose, and at the time of trial, had the remainder, of $14,000, in her apartment at 338 South Alvarado Street, Los Angeles, California. . . . During the life of decedent, no part of said $27,000 in bonds, or of the interest or proceeds from the sale of any of them, was delivered to any charity or used for any charitable

---

\*Finding No. IV reads: "During his lifetime decedent established a checking account at the Security-First National Bank of Los Angeles, Fifth and Spring Branch, in the name of 'John H. Fritz or Catherine Fritz.' All the funds deposited in said account were the funds of John H. Fritz, and nothing was ever contributed to said account by Catherine Fritz. During the lifetime of decedent Catherine Fritz drew checks on said account solely for the use and benefit of John H. Fritz. The sole purpose of establishing said bank account in the two names as aforesaid, was to make it possible to take care of the living expenses and other current obligations of John H. Fritz at times when it might be inconvenient or physically impossible for him to do so personally. It was agreed between John H. Fritz and Catherine Fritz at the time said account was established, and it was the understanding and intention of both of them at all times thereafter, that said account and the placing of the same in both names were solely for the benefit and convenience of John H. Fritz, and that Catherine Fritz had no interest therein and would have no survivorship right therein. At the death of John H. Fritz there was a balance of $9,889.89, in said account. The sum of $7,889.89 was withdrawn from said account by defendant and was converted by her to her own use, and $2,000 remains in said account."

purpose or otherwise given away for the poor or for education. The decedent did not at any time designate any specific charity or donee for or to which or for or to whom said bonds or any thereof or their proceeds or any thereof were or was to be distributed. It was at all times the intention of decedent that defendant have no property or other interest in the 25 per cent part of said bonds which, by his specific direction, was to go to charity.

"Upon the death of said John H. Fritz, bonds or funds in the possession of defendant and representing, being or derived from said one-fourth part of said bonds in the total value of $27,000, the value of said one-fourth part being $6,750, were the property of the heirs of said John H. Fritz, who were entitled to have such bonds or funds in the value of $6,750 delivered to their representative or representatives in the administration of said estate. That defendant had refused to make such delivery, and in so refusing she has converted said property to her own use, and this she has done in spite of the fact that after the death of John H. Fritz she did pay out for charitable and benevolent purposes substantial sums received into her possession from property previously belonging to said decedent."

*Yes.* These findings were supported by the evidence. It should be noted at the outset that the trial court did not find as asserted by appellant that the whole of the property was a gift to her. What the court found was that the entire property was placed in the possession of appellant, not that there was a gift of the whole. Appellant testified that her uncle had told her about the money in the valise, some of which was marked with slips of paper and part of which was to go to charity. She testified, "He said, 'It is marked on the slips of paper just how I want you to do it, and if at all possible I would like to have you carry out my intention.' Of course, I couldn't carry it all out after his death because I spent some for litigation, and my expenses were very, very great, so I couldn't carry it out like I should have." In response to a question by the court as to whether the things she was to give to other people or to charity were to be so given before or after decedent's death, appellant testified it was to be afterward.

Appellant contends that since upon a certain note which accompanied bonds given into the possession of appellant it read, "25% of these bonds for charity, for the poor and education," and a later note on the same slip read "These her

own property in this package, bonds," that the trial court should have found that the bonds in the package were the sole property of appellant. This construction does not necessarily follow. The construction placed thereon by the trial court is a reasonable one, that is, the bonds with the exception of 25 per cent thereof were to be the property of appellant.

The foregoing evidence clearly sustains the trial court's findings.

■ Third: *Was there substantial evidence to sustain this finding?*:

"Finding No. VIII. On or about June 1, 1946, decedent placed in the possession of defendant various packages containing United States currency. All said currency was intended by decedent to be *inter vivos* gifts to defendant excepting the sum of $2,406.25, which sum decedent placed in defendant's possession for delivery by her as his agent to unnamed and unspecified charities. It was at all times the intention of decedent that defendant have no property or other interest in said sums of currency totaling $2,406.25. It was at all times decedent's intention that defendant act as his agent for the distribution of said $2,406.25 to charity. Defendant did not during the lifetime of decedent distribute or pay over any part of said $2,406.25 to any charity or use it for any charitable purpose; and upon the death of John H. Fritz, said sum of $2,406.25 became the property of his heirs, who were entitled to have said sum delivered to their representative or representatives in the administration of said estate. Defendant has failed and refused to pay over to plaintiffs, as administrators, any part of said $2,406.25."

*Yes.* The evidence discloses that one of the bundles of cash handed to appellant amounted to $3,700. Accompanying the bundle was a slip of paper indicating one half the sum was to go to charity. Another bundle contained the sum of $2,225 and was accompanied by a slip of paper indicating that 25 per cent was to go to charity. It is obvious that one half of $3,700 and 25 per cent of $2,225 equal $2,406.25, the amount which the court found decedent told appellant to devote to charity. Therefore the trial court's finding is sustained by the evidence.

The judgment is reversed with directions to make appropriate findings with respect to the joint bank account in accordance with the views herein and then to enter judgment accordingly. The judgment in other respects is affirmed.

Moore, P. J., and Fox, J., concurred.