[Sac. No. 7725.   In Bank.   Feb. 6, 1968.]

REBECCA D. MASTERSON et al., Plaintiffs and Respondents, v. LU E. SINE et al., Defendants and Appellants.

Rawlins Coffman and Noel Watkins for Defendants and Appellants.

Glicksberg, Kushner & Goldberg, Lawrence Goldberg, Truce & Veal, Harlan Veal and Duard F. Geis for Plaintiffs and Respondents.

TRAYNOR, C. J.—Dallas Masterson and his wife Rebecca owned a ranch as tenants in common. On February 25, 1958, they conveyed it to Medora and Lu Sine by a grant deed "Reserving unto the Grantors herein an option to purchase the above described property on or before February 25, 1968" for the "same consideration as being paid heretofore plus their depreciation value of any improvements Grantees may add to the property from and after two and a half years from this date." Medora is Dallas' sister and Lu's wife. Since the conveyance Dallas has been adjudged bankrupt. His trustee in bankruptcy and Rebecca brought this declaratory relief action to establish their right to enforce the option.

The case was tried without a jury. Over defendants' objection the trial court admitted extrinsic evidence that by "the same consideration as being paid heretofore" both the grantors and the grantees meant the sum of $50,000 and by "depreciation value of any improvements" they meant the depreciation value of improvements to be computed by deducting from the total amount of any capital expenditures made by defendants grantees the amount of depreciation allowable to them under United States income tax regulations as of the time of the exercise of the option.

The court also determined that the parol evidence rule precluded admission of extrinsic evidence offered by defendants to show that the parties wanted the property kept in the Masterson family and that the option was therefore personal to the grantors and could not be exercised by the trustee in bankruptcy.

The court entered judgment for plaintiffs, declaring their right to exercise the option, specifying in some detail how it could be exercised, and reserving jurisdiction to supervise the manner of its exercise and to determine the amount that plaintiffs will be required to pay defendants for their capital expenditures if plaintiffs decide to exercise the option.

■ Defendants appeal. They contend that the option provision is too uncertain to be enforced and that extrinsic evidence as to its meaning should not have been admitted. The trial court properly refused to frustrate the obviously declared intention of the grantors to reserve an option to repurchase by an overly meticulous insistence on completeness and

clarity of written expression. (See *California Lettuce Growers, Inc.* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496]; *Rivers* v. *Beadle* (1960) 183 Cal. App.2d 691, 695-697 [7 Cal.Rptr. 170].) It properly admitted extrinsic evidence to explain the language of the deed (*Nofziger* v. *Holman* (1964) 61 Cal.2d 526, 528 [39 Cal.Rptr. 384, 393 P.2d 696]; *Barham* v. *Barham* (1949) 33 Cal.2d 416, 422-423 [202 P.2d 289]; *Union Oil Co.* v. *Union Sugar Co.* (1948) 31 Cal.2d 300, 306 [188 P.2d 470]; *Schmidt* v. *Macco Constr. Co.* (1953) 119 Cal.App.2d 717, 730 [260 P.2d 230]; see Farnsworth, *"Meaning" in the Law of Contracts* (1967) 76 Yale L.J. 939, 959-965; Corbin, *The Interpretation of Words and the Parol Evidence Rule* (1965) 50 Cornell L.Q. 161) to the end that the consideration for the option would appear with sufficient certainty to permit specific enforcement (see *McKeon* v. *Santa Claus of Cal., Inc.* (1964) 230 Cal.App.2d 359, 364 [41 Cal.Rptr. 43]; *Vurrow* v. *Timmsen* (1963) 223 Cal. App.2d 283, 288 [35 Cal.Rptr. 668, 100 A.L.R.2d 544]). The trial court erred, however, in excluding the extrinsic evidence that the option was personal to the grantors and therefore nonassignable.

When the parties to a written contract have agreed to it as an "integration"—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms. (*Pollyanna Homes, Inc.* v. *Berney* (1961) 56 Cal.2d 676, 679-680 [16 Cal.Rptr. 345, 365 P.2d 401]; *Hale* v. *Bohannon* (1952) 38 Cal.2d 458, 465 [241 P.2d 4]; see 3 Corbin, Contracts (1960) § 573, p. 357; Rest., Contracts (1932) §§ 228 (and com. a), 237; Code Civ. Proc., § 1856; Civ. Code, § 1625.) When only part of the agreement is integrated, the same rule applies to that part, but parol evidence may be used to prove elements of the agreement not reduced to writing. (*Hulse* v. *Juillard Fancy Foods Co.* (1964) 61 Cal.2d 571, 573 [39 Cal.Rptr. 529, 394 P.2d 65]; *Schwartz* v. *Shapiro* (1964) 229 Cal.App.2d 238, 250 [40 Cal.Rptr. 189]; *Mangini* v. *Wolfschmidt, Ltd.* (1958) 165 Cal.App.2d 192, 200-201 [331 P.2d 728]; Rest., Contracts (1932) § 239.)

The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement.

The instrument itself may help to resolve that issue. It may state, for example, that "there are no previous understandings or agreements not contained in the writing," and

thus express the parties' "intention to nullify antecedent understandings or agreements." (See 3 Corbin, Contracts (1960) § 578, p. 411.) Any such collateral agreement itself must be examined, however, to determine whether the parties intended the subjects of negotiation it deals with to be included in, excluded from, or otherwise affected by the writing. Circumstances at the time of the writing may also aid in the determination of such integration. (See 3 Corbin, Contracts (1960) §§ 582-584; McCormick, Evidence (1954) § 216, p. 441; 9 Wigmore, Evidence (3d ed. 1940) § 2430, p. 98, § 2431, pp. 102-103; Witkin, Cal. Evidence (2d ed. 1966) § 721; *Schwartz* v. *Shapiro, supra,* 229 Cal.App.2d 238, 251, fn. 8; contra, 4 Williston, Contracts (3d ed. 1961) § 633, pp. 1014-1016.)

California cases have stated that whether there was an integration is to be determined solely from the face of the instrument (e.g., *Thoroman* v. *David* (1926) 199 Cal. 386, 389-390 [249 P. 513]; *Heffner* v. *Gross* (1919) 179 Cal. 738, 742-743 [178 P. 860]; *Gardiner* v. *McDonogh* (1905) 147 Cal. 313, 318-321 [81 P. 964]; *Harrison* v. *McCormick* (1891) 89 Cal. 327, 330 [26 P. 830, 23 Am.St.Rep. 469]), and that the question for the court is whether it "appears to be a complete . . . agreement. . . ." (See *Ferguson* v. *Koch* (1928) 204 Cal. 342, 346 [268 P. 342, 58 A.L.R. 1176]; *Harrison* v. *McCormick, supra,* 89 Cal. 327, 330.) Neither of these strict formulations of the rule, however, has been consistently applied. The requirement that the writing must appear incomplete on its face has been repudiated in many cases where parol evidence was admitted "to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms"—even though the instrument appeared to state a complete agreement. (E.g., *American Industrial Sales Corp.* v. *Airscope, Inc.* (1955) 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344]; *Stockburger* v. *Dolan* (1939) 14 Cal.2d 313, 317 [94 P.2d 33, 128 A.L.R. 83]; *Crawford* v. *France* (1933) 219 Cal. 439, 443 [27 P.2d 645]; *Buckner* v. *A. Leon & Co.* (1928) 204 Cal. 225, 227 [267 P. 693]; *Sivers* v. *Sivers* (1893) 97 Cal. 518, 521 [32 P. 571]; cf. *Simmons* v. *California Institute of Technology* (1949) 34 Cal.2d 264, 274 [209 P.2d 581].) Even under the rule that the writing alone is to be consulted, it was found necessary to examine the alleged collateral agreement before concluding that proof of it was precluded by the writing alone. (See 3 Corbin, Contracts (1960) § 582, pp. 444-446.) It is therefore evident that "The conception of a writing as wholly and intrinsically self-determinative of the parties' intent to make it a sole memorial

of one or seven or twenty-seven subjects of negotiation is an impossible one." (9 Wigmore, Evidence (3d ed. 1940) § 2431, p. 103.) For example, a promissory note given by a debtor to his creditor may integrate all their present contractual rights and obligations, or it may be only a minor part of an underlying executory contract that would never be discovered by examining the face of the note.

In formulating the rule governing parol evidence, several policies must be accommodated. One policy is based on the assumption that written evidence is more accurate than human memory. (*Germain Fruit Co.* v. *J. K. Armsby Co.* (1908) 153 Cal. 585, 595 [96 P. 319].) This policy, however, can be adequately served by excluding parol evidence of agreements that directly contradict the writing. Another policy is based on the fear that fraud or unintentional invention by witnesses interested in the outcome of the litigation will mislead the finder of facts. (*Germain Fruit Co.* v. *J. K. Armsby Co., supra,* 153 Cal. 585, 596; *Mitchill* v. *Lath* (1928) 247 N.Y. 377, 388 [160 N.E. 646, 68 A.L.R. 239] [dissenting opinion by Lehman, J.] ; see 9 Wigmore, Evidence (3d ed. 1940) § 2431, p. 102; Murray, *The Parol Evidence Rule: A Clarification* (1966) 4 Duquesne L.Rev. 337, 338-339.) McCormick has suggested that the party urging the spoken as against the written word is most often the economic underdog, threatened by severe hardship if the writing is enforced. In his view the parol evidence rule arose to allow the court to control the tendency of the jury to find through sympathy and without a dispassionate assessment of the probability of fraud or faulty memory that the parties made an oral agreement collateral to the written contract, or that preliminary tentative agreements were not abandoned when omitted from the writing. (See McCormick, Evidence (1954) § 210.) He recognizes, however, that if this theory were adopted in disregard of all other considerations, it would lead to the exclusion of testimony concerning oral agreements whenever there is a writing and thereby often defeat the true intent of the parties. (See McCormick, *op. cit. supra,* § 216, p. 441.)

█ Evidence of oral collateral agreements should be excluded only when the fact finder is likely to be misled. The rule must therefore be based on the credibility of the evidence. One such standard, adopted by section 240(1)(b) of the Restatement of Contracts, permits proof of a collateral agreement if it "is such an agreement as might *naturally* be made as a separate agreement by parties situated as were the parties

to the written contract." (Italics added; see McCormick, Evidence (1954) § 216, p. 441; see also 3 Corbin, Contracts (1960) § 583, p. 475, § 594, pp. 568-569; 4 Williston, Contracts (3d ed. 1961) § 638, pp. 1039-1045.) The draftsmen of the Uniform Commercial Code would exclude the evidence in still fewer instances: "If the additional terms are such that, if agreed upon, they would *certainly* have been included in the document in the view of the court, then evidence of their alleged making must be kept from the trier of fact." (Com. 3, § 2-202, italics added.)[1]

The option clause in the deed in the present case does not explicitly provide that it contains the complete agreement, and the deed is silent on the question of assignability. Moreover, the difficulty of accommodating the formalized structure of a deed to the insertion of collateral agreements makes it less likely that all the terms of such an agreement were included.[2] (See 3 Corbin, Contracts (1960) § 587; 4 Williston, Contracts (3d ed. 1961) § 645; 70 A.L.R. 752, 759 (1931); 68 A.L.R. 245 (1930).) The statement of the reservation of the option might well have been placed in the recorded deed solely to preserve the grantors' rights against any possible future purchasers, and this function could well be served without any mention of the parties' agreement that the option was personal. There is nothing in the record to indicate that the parties to this family transaction, through experience in land transactions or otherwise, had any warning of the disadvantages of failing to put the whole agreement in the deed. This case is one, therefore, in which it can be said that a collateral agreement such as that alleged "might naturally be made as a separate agreement." *A fortiori*, the case is not one

---

[1]Corbin suggests that, even in situations where the court concludes that it would not have been natural for the parties to make the alleged collateral oral agreement, parol evidence of such an agreement should nevertheless be permitted if the court is convinced that the unnatural actually happened in the case being adjudicated. (3 Corbin, Contracts, § 485, pp. 478, 480; cf. Murray, *The Parol Evidence Rule: A Clarification* (1966) 4 Duquesne L. Rev. 337, 341-342.) This suggestion may be based on a belief that judges are not likely to be misled by their sympathies. If the court believes that the parties intended a collateral agreement to be effective, there is no reason to keep the evidence from the jury.

[2]See *Goble* v. *Dotson* (1962) 203 Cal.App.2d 272 [21 Cal.Rptr. 769], where the deed given by a real estate developer to the plaintiffs contained a condition that grantees would not build a pier or boathouse. Despite this reference in the deed to the subject of berthing for boats, the court allowed plaintiffs to prove by parol evidence that the condition was agreed to in return for the developer's oral promise that plaintiffs were to have the use of two boat spaces nearby.

in which the parties "would certainly" have included the collateral agreement in the deed.

It is contended, however, that an option agreement is ordinarily presumed to be assignable if it contains no provisions forbidding its transfer or indicating that its performance involves elements personal to the parties. (*Mott* v. *Cline* (1927) 200 Cal. 434, 450 [253 P. 718]; *Altman* v. *Blewett* (1928) 93 Cal.App. 516, 525 [269 P. 751].) The fact that there is a written memorandum, however, does not necessarily preclude parol evidence rebutting a term that the law would otherwise presume. In *American Industrial Sales Corp.* v. *Airscope, Inc., supra,* 44 Cal.2d 393, 397-398, we held it proper to admit parol evidence of a contemporaneous collateral agreement as to the place of payment of a note, even though it contradicted the presumption that a note, silent as to the place of payment, is payable where the creditor resides. (For other examples of this approach, see *Richter* v. *Union Land etc. Co.* (1900) 129 Cal. 367, 375 [62 P. 39] [presumption of time of delivery rebutted by parol evidence]; *Wolters* v. *King* (1897) 119 Cal. 172, 175-176 [51 P. 35] [presumption of time of payment rebutted by parol evidence]; *Mangini* v. *Wolfschmidt, Ltd., supra,* 165 Cal.App.2d 192, 198-201 [presumption of duration of an agency contract rebutted by parol evidence]; *Zinn* v. *Ex-Cell-O Corp.* (1957) 148 Cal.App.2d 56, 73-74 [306 P.2d 1017]; see also Rest., Contracts, § 240, com. c.)[3] Of course a statute may preclude parol evidence to rebut a statutory presumption. (*E. G. Neff* v. *Ernst* (1957) 48 Cal.2d 628, 635 [311 P.2d 489] [commenting on Civ. Code, § 1112]; *Kilfoy* v. *Fritz* (1954) 125 Cal.App.2d 291, 293-294 [270 P.2d

[3] Counsel for plaintiffs direct our attention to numerous cases that they contend establish that parol evidence may never be used to show a collateral agreement contrary to a term that the law presumes in the absence of an agreement. In each of these cases, however, the decision turned upon the court's belief that the writing was a complete integration and was no more than an application of the rule that parol evidence cannot be used to vary the terms of a completely integrated agreement. (Cf. discussion in *Mangini* v. *Wolfschmidt, Ltd., supra,* 165 Cal.App.2d 192, 203.) In *Gardiner* v. *McDonogh, supra,* 147 Cal. 313, 319, defendants sought to prove a collateral agreement that beans sold them were to conform to a sample earlier given. The court purportedly looked only to the face of the writing to decide whether parol evidence was admissible, and such evidence would be excluded if the writing was "clear and complete." Defendants argued that the written order was not complete because it did not fix a time and place of delivery, but the court answered that the failure to state those terms did not result in incompleteness because the law would supply them by implication. This decision was based on the belief that the question of admissibility had to be decided from the face of the instrument alone. Virtually every writing leaves

579] [applying Deering's Gen. Laws, 1937, Act. 652, § 15(a)] ; see also Com. Code, § 9-318, subd. (4).) Here, however, there is no such statute. ■ In the absence of a controlling statute the parties may provide that a contract right or duty is nontransferable. (*La Rue* v. *Groezinger* (1890) 84 Cal. 281, 283 [24 P. 42, 18 Am.St.Rep. 179] ; *Benton* v. *Hofmann Plastering Co.* (1962) 207 Cal.App.2d 61, 68 [24 Cal.Rptr. 268] ; *Parkinson* v. *Caldwell* (1954) 126 Cal.App.2d 548, 552-553 [272 P.2d 934] ; see 4 Corbin, Contracts (1951) §§ 872-873.) ■ Moreover, even when there is no explicit agreement—written *or* oral—that contractual duties shall be personal, courts will effectuate a presumed intent to that effect if the circumstances indicate that performance by a substituted person would be different from that contracted for. (*Farmland Irr. Co.* v. *Dopplmaier* (1957) 48 Cal.2d 208, 222 [308 P.2d 732, 66 A.L.R.2d 590] ; *Prichard* v. *Kimball* (1923) 190 Cal. 757, 764-765 [214 P. 863] ; *Simmons* v. *Zimmerman* (1904) 144 Cal. 256, 260-261 [79 P. 451, 1 Ann.Cas. 850] ; *La Rue* v. *Groezinger, supra,* 84 Cal. 281, 285 ; *Coykendall* v. *Jackson*

some terms to be implied and almost none would qualify as integrations without implying some terms. The decision was therefore a product of an outmoded approach to the parol evidence rule, not of any compulsion to give conclusive effect to presumptions of implied terms.

In *Standard Box Co.* v. *Mutual Biscuit Co.* (1909) 10 Cal.App. 746, 750 [103 P. 938], the rationale of *Gardiner* v. *McDonogh* was extended to exclude evidence of an agreement for a time of performance other than the ''reasonable time'' implied by law in a situation where the writing, although stating no time of performance, was ''clear and complete when aided by that which is imported into it by legal implication.'' This decision was simply an application of the then-current theory regarding integration. The court regarded the instrument as a complete integration, and it therefore precluded proof of collateral agreements. Since it is now clear that integration cannot be determined from the writing alone, the decision is not authoritative insofar as it finds a complete integration. There is no reason to believe that the court gave any independent significance to implied terms. Had the court found from the writing alone that there was no integration, there is nothing to indicate that it would have excluded proof contrary to terms it would have otherwise presumed.

In *Buffalo Arms, Inc.* v. *Remler Co.* (1960) 179 Cal.App.2d 700, 710 [4 Cal.Rptr. 103], the court refused to admit parol evidence showing a collateral oral agreement that a buyer would have more than the ''reasonable time'' presumed by law to refuse goods, but the decision is based on a conclusion that the writing on its face was a complete expression of the agreement. In *La France* v. *Kashishian* (1928) 204 Cal. 643, 645 [269 P. 655], and *Fogler* v. *Purkiser* (1932) 127 Cal.App. 554, 559-560 [16 P.2d 305], there are no clear findings concerning the completeness of the writings; but the argument in each case is borrowed from the *Standard Box Co.* decision and thus implies a finding of a complete integration. *Calpetro Producers Syndicate* v. *C. M. Woods Co.* (1929) 206 Cal. 246, 247-248, 252 [274 P. 65], relies on *Standard Box Co.* and expressly finds a complete integration.

(1936) 17 Cal.App.2d 729, 731 [62 P.2d 746]; see 4 Corbin, Contracts (1951) § 865; 3 Williston, Contracts (3d ed. 1960) § 412, pp. 32-33; Rest., Contracts (Tent. Draft No. 3, 1967) § 150(2).)

▪ In the present case defendants offered evidence that the parties agreed that the option was not assignable in order to keep the property in the Masterson family. The trial court erred in excluding that evidence.

The judgment is reversed.

Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. The majority opinion:

(1) Undermines the parol evidence rule as we have known it in this state since at least 1872[1] by declaring that parol evidence should have been admitted by the trial court to show that a written option, absolute and unrestricted in form, was intended to be limited and nonassignable;

(2) Renders suspect instruments of conveyance absolute on their face;

(3) Materially lessens the reliance which may be placed upon written instruments affecting the title to real estate; and

(4) Opens the door, albeit unintentionally, to a new technique for the defrauding of creditors.

The opinion permits defendants to establish by parol testimony that their grant[2] to their brother (and brother-in-law) of a written option, absolute in terms, was nevertheless agreed to be nonassignable by the grantee (now a bankrupt), and that therefore the right to exercise it did not pass, by operation of the bankruptcy laws, to the trustee for the benefit of the grantee's creditors.

And how was this to be shown? By the proffered testimony of the bankrupt optionee himself! Thereby one of his assets (the option to purchase defendants' California ranch) would be withheld from the trustee in bankruptcy and from the bankrupt's creditors. Understandably the trial court, as required by the parol evidence rule, did not allow the bankrupt by parol to so contradict the unqualified language of the written option.

___

[1] In that year the Legislature set forth the rule in sections 1625 of the Civil Code and 1856 of the Code of Civil Procedure.

[2] The option was in the form of a reservation in a deed; however, in legal effect it is the same as if it had been contained in a separate document.

The court properly admitted parol evidence to explain the intended meaning of the "same consideration" and "depreciation value" phases of the written option to purchase defendants' land, as the intended meaning of those phrases was not clear. However, there was nothing ambiguous about the *granting* language of the option and not the slightest suggestion in the document that the option was to be nonassignable. Thus, to permit such words of limitation to be added by parol is to *contradict* the absolute nature of the grant, and to directly violate the parol evidence rule.

Just as it is unnecessary to state in a deed to "lot X" that the house located thereon goes with the land, it is likewise unnecessary to add to "I grant an option to Jones" the words *"and his assigns"* for the option to be assignable. As hereinafter emphasized in more detail, California statutes expressly declare that it *is* assignable, and only if I add language in writing showing my intent to withhold or restrict the right of assignment may the grant be so limited. Thus, to seek to restrict the grant by parol is to *contradict* the written document in violation of the parol evidence rule.

The majority opinion arrives at its holding via a series of false premises which are not supported either in the record of this case or in such California authorities as are offered.

The parol evidence rule is set forth in clear and definite language in the statutes of this state. (Civ. Code, § 1625; Code Civ. Proc., § 1856.) It "is not a rule of evidence but is one of substantive law. . . . The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), *becomes the contract of the parties.*" (*Hale* v. *Bohannon* (1952) 38 Cal.2d 458, 465 [1, 2] [241 P.2d 4], quoting from *Estate of Gaines* (1940) 15 Cal.2d 255, 264-265 [100 P.2d 1055].) The rule is based upon the sound principle that the parties to a written instrument, after committing their agreement to or evidencing it by the writing, are not permitted to add to, vary or *contradict* the terms of the writing by parol evidence. As aptly expressed by the author of the present majority opinion, speaking for the court in *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865 [2] [44 Cal.Rptr. 767, 402 P.2d 839], and in *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265], such evidence is "admissible to interpret the instrument, but *not to give it a meaning* to which it is not reasonably susceptible." (Italics added.) Or, as stated by the same author, concurring

in *Laux* v. *Freed* (1960) 53 Cal.2d 512, 527 [2 Cal.Rptr. 265, 348 P.2d 873], "extrinsic evidence is not admissible to 'add to, *detract from, or vary* its terms.'" (Italics added.)

At the outset the majority in the present case reiterate[3] that the rule against contradicting or varying the terms of a writing remains applicable when only part of the agreement is contained in the writing, and parol evidence is used to prove elements of the agreement not reduced to writing. But having restated this established rule, the majority opinion inexplicably proceeds to subvert it.

Each of the three cases cited by the majority (fn. 3, *ante*) holds that although parol evidence is admissible to prove the parts of the contract not put in writing, it is *not admissible* to vary or *contradict* the writing *or prove* collateral *agreements* which are *inconsistent* therewith. The meaning of this rule (and the application of it found in the cases) is that if the asserted unwritten elements of the agreement would contradict, add to, detract from, vary or be inconsistent with the written agreement, then such elements *may not* be shown by *parol* evidence.

The contract of sale and purchase of the ranch property here involved was carried out through a title company upon written escrow instructions executed by the respective parties after various preliminary negotiations. The deed to defendant grantees, in which the grantors expressly reserved an option to repurchase the property within a ten-year period and upon a specified consideration, was issued and delivered in consummation of the contract. In neither the written escrow instructions nor the deed containing the option is there any language even suggesting that the option was agreed or intended by the parties to be personal to the grantors, and so nonassignable. The trial judge, on at least three separate occasions, correctly sustained objections to efforts of defendant optionors to get into evidence the testimony of Dallas Masterson (the bankrupt holder of the option) that a part of the agreement of sale of the parties was that the option to repurchase the property was personal to him, and therefore unassignable for benefit of creditors. But the majority hold that that testimony should have been admitted, thereby permitting defendant optionors

---

[3]Citing three California cases (*ante*, p. 225); *Hulse* v. *Juillard Fancy Foods Co.* (1964) 61 Cal.2d 571, 573 [39 Cal.Rptr. 529, 394 P.2d 65]; *Schwartz* v. *Shapiro* (1964) 229 Cal.App.2d 238, 250 [40 Cal.Rptr. 189]; *Mangini* v. *Wolfschmidt, Ltd.* (1958) 165 Cal.App.2d 192, 200-201 [331 P.2d 728].

to limit, detract from and contradict the plain and unrestricted terms of the written option in clear violation of the parol evidence rule and to open the door to the perpetration of fraud.

Options are property, and are widely used in the sale and purchase of real and personal property. One of the basic incidents of property ownership is the right of the owner to sell or transfer it. The author of the present majority opinion, speaking for the court in *Farmland Irr. Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 222 [308 P.2d 732, 66 A.L.R.2d 590], put it this way: ''The statutes in this state clearly manifest a policy in favor of the free transferability of all types of property, including rights under contracts.''[4] (Citing Civ. Code, §§ 954, 1044, 1458[5]; see also 40 Cal.Jur.2d 289-291, and cases there cited.) These rights of the owner of property to transfer it, confirmed by the cited code sections, are elementary rules of substantive law and not the mere disputable presumptions which the majority opinion in the present case would make of them. Moreover, the right of transferability applies to an option to purchase, unless there are words of limitation in the option forbidding its assignment or showing that it was given because of a peculiar trust or confidence reposed in the optionee. (*Mott v. Cline* (1927) 200 Cal. 434, 450 [11] [253 P. 718]; *Prichard v. Kimball* (1923) 190 Cal. 757, 764-765 [4, 5] [214 P. 863]; *Altman v. Blewett* (1928) 93 Cal.App. 516, 525 [3] [269 P. 751]; see also 5 Cal.Jur.2d 393, 395-396, and cases there cited.) Thus, in *Prichard* the language of the *document itself* (a written, *expressly nonassignable* lease, with option to buy) was held to establish the trust or confidence reposed in the optionee and so to negate assignability of the option.

The right of an optionee to transfer his option to purchase property is accordingly one of the basic rights which accompanies the option unless limited under the language of the option itself. To allow an optionor to resort to parol evidence to support his assertion that the written option is not transferable

---

[4]The opinion continues: ''The terms and purpose of a contract may show, however, that it was intended to be nonassignable.'' With this qualification of the general rule I am in accord, but here it is inapplicable as language indicating any intention whatever to restrict assignability is completely nonexistent.

[5]Section 1044: ''Property of any kind may be transferred, except as otherwise provided by this article.'' The *only* property the article provides cannot be transferred is ''A mere possibility, not coupled with an interest.'' (§ 1045.)

Section 1458: ''A right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such.''

is to authorize him to limit the option by attempting to restrict and reclaim rights with which he has already parted. A clearer violation of two substantive and basic rules of law—the parol evidence rule and the right of free transferability of property—would be difficult to conceive.

The majority opinion attempts to buttress its approach by asserting (*ante,* p. 226) that "California cases have stated that whether there was an integration is to be determined solely from the face of the instrument [citations], and that the question for the court is whether it 'appears to be a complete . . . agreement. . . . [citations]," but that "Neither of these strict formulations of the rule . . . has been consistently applied."

The majority's claim of inconsistent application of the parol evidence rule by the California courts fails to find support in the examples offered. First, the majority opinion asserts (*ante,* p. 226) that "The requirement that the writing must appear incomplete on its face has been repudiated in many cases where parol evidence was admitted 'to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms'—even though the instrument appeared to state a complete agreement. [Citations.]" But an examination of the cases cited in support of the quoted statement discloses that on the contrary in every case which is pertinent here (with a single exception) the writing was obviously incomplete on its face.[6] In the one exception (*Stockburger* v. *Dolan* (1939) 14 Cal.2d 313, 317 [94 P.2d 33, 128 A.L.R. 83]) it was held that lessors under a lease to drill for oil in an area zoned against such drilling should be permitted to show by parol that the lessee had contemporaneously agreed orally to seek a variance—an agreement which, as the opinion points out, *did not contradict* the written contract. But what is additionally noteworthy in *Stockburger,* and controlling here, is

---

[6]Thus in *American Industrial Sales Corp.* v. *Airscope, Inc.* (1955) 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344], the contract was *silent* as to the *place of payment* for property purchased; in *Crawford* v. *France* (1933) 219 Cal. 439, 443 [27 P.2d 645], a contract for an architect's fee based upon the cost of a building was *silent* as to such cost; in *Buckner* v. *A. Leon & Co.* (1928) 204 Cal. 225, 227 [267 P. 693], a contract for sale and purchase of grapes was *silent* as to which party was to furnish the lug boxes required for delivery; in *Sivers* v. *Sivers* (1893) 97 Cal. 518, 521 [32 P. 571], a written agreement to repay money loaned was *silent* as to the time for payment; and *Simmons* v. *California Institute of Technology* (1949) 34 Cal.2d 264, 274 [9] [209 P.2d 581], was a case of *fraud* in the *inducement* and *not one of parol evidence to show a promise* or agreement *inconsistent* with the written contract.

the further holding that lessors *could not show by parol* that lessee had orally agreed that a lease provision suspending payment of rental under certain circumstances would not apply during certain periods of time—as "evidence to that effect would vary the terms of the contract in that particular . . . ." (P. 317 [5] of 14 Cal.2d.)

In further pursuit of what would appear to be nonexistent support for its assertions of inconsistency in California cases, the majority opinion next declares (*ante*, p. 226) that "Even under the rule that the writing alone is to be consulted, it was found necessary to examine the alleged collateral agreement before concluding that proof of it was precluded by the writing alone. (See 3 Corbin, Contracts (1960) § 582, pp. 444-446.)" Not only are *no California cases cited* by the majority in supposed support for the quoted declaration (offered by the majority as an example of inconsistent applications of the parol evidence rule by *California courts*), but 3 Corbin, Contracts, which the majority do cite, likewise refers to *no California cases*, and makes but scanty citation to any cases whatever. In any event, in what manner other than by "examining" an alleged collateral agreement is it possible for a court to rule upon the admissibility of testimony or upon an offer of proof with respect to such agreement?

The majority opinion has thus demonstrably failed to substantiate its next utterance (*ante*, pp. 226-227) that " 'The conception of a writing as wholly and intrinsically self-determinative of the parties' intent to make it a sole memorial of one or seven or twenty-seven subjects of negotiation is an impossible one,' " citing 9 Wigmore, Evidence (3d ed. 1940) section 2431, page 103, whose *views* on the subject were *rejected* by this court as early as 1908 in *Germain Fruit Co.* v. *J. K. Armsby Co.,* 153 Cal. 585, 595 [96 P. 319], which, indeed, is *also cited by* the *majority* in the present case. And the example given, that of a promissory note, is obviously specious. Rarely, if ever, does a promissory note given by a debtor to his creditor integrate *all* their agreements (that is not the purpose it serves); it may or it may not integrate *all* their present contractual rights and obligations; but relevant to the parol evidence rule, at least until the advent of the majority opinion in this case, alleged collateral agreements which would vary or contradict the terms and conditions of a promissory note may *not* be shown by parol. (*Bank of America etc. Assn.* v. *Pendergrass* (1935) 4 Cal.2d 258, 263-264 [6] [48 P.2d 659].)

Upon this structure of incorrect premises and unfounded

# 237

assertions the majority opinion arrives at its climax: The pronouncement of "several policies [to] be accommodated . . . [*i*]*n formulating the rule governing parol evidence.*" (Italics added.)[7] Two of the "policies" as declared by the majority are: Written evidence is more accurate than human memory[8]; fraud or unintentional invention by interested witnesses may well occur.

I submit that these purported "policies" are in reality two of the basic and obvious reasons for adoption by the Legislature of the parol evidence rule as the policy in this state. Thus the speculation of the majority (*ante,* pp. 227-228) concerning the views of various writers on the subject and the advisability of following them in this state is not only superfluous but flies flatly in the face of established California law and policy. It serves only to introduce uncertainty and confusion in a field of substantive law which was codified and made certain in this state a century ago.

However, despite the law which until the advent of the present majority opinion has been firmly and clearly established in California and relied upon by attorneys and courts alike, that parol evidence may *not* be employed to vary or contradict the terms of a written instrument, the majority now announce (*ante,* p. 227) that such evidence "should be excluded only when the fact finder is *likely to be misled,*" and that "The rule must therefore be based on the *credibility of the evidence.*" (Italics added.) But was it not, inter alia, to avoid misleading the fact finder, and to further the introduction of only the evidence which is most likely to *be* credible (the written document), that the Legislature adopted the parol evidence rule as a part of the substantive law of this state?

Next, in an effort to implement this newly promulgated "credibility" test, the majority opinion offers a choice of two "standards": one, a "certainty" standard, quoted from the Uniform Commercial Code[9] (*ante,* p. 228), and the other a

[7]It is the *Legislature* of this state which *did the formulating* of the rule governing parol evidence nearly a century ago when in 1872, as previously noted, sections 1625 of the Civil Code and 1856 of the Code of Civil Procedure were adopted. And as already shown herein, the rule has since been consistently applied by the courts of this state. The parol evidence rule as thus laid down by the Legislature and applied by the courts *is the policy* of this state.

[8]Although the majority declare that this first "policy" may be served by excluding parol evidence of agreements that directly contradict the writing, such contradiction is *precisely* the *effect* of the agreement sought to be shown by parol in this case.

[9]"If the additional terms are such that, if agreed upon, they would *certainly* have been included in the document in the view of the court,

"natural" standard found in the Restatement of Contracts[10] (*ante*, p. 227), and concludes (*ante*, p. 228) that at least for purposes of the present case the "natural" viewpoint should prevail.

This new rule, not hitherto recognized in California, provides that proof of a claimed collateral oral agreement is admissible if it is such an agreement as might *naturally* have been made a separate agreement by the parties under the particular circumstances. I submit that this approach opens the door to uncertainty and confusion. Who can know what its limits are? Certainly I do not. For example, in its application to this case who could be expected to divine as "natural" a separate oral agreement between the parties that the assignment, absolute and unrestricted on its face, was intended by the parties to be limited to the Masterson family?

Or, assume that one gives to his relative a promissory note and that the payee of the note goes bankrupt. By operation of law the note becomes an asset of the bankruptcy. The trustee attempts to enforce it. Would the relatives be permitted to testify that by a separate oral agreement made at the time of the execution of the note it was understood that should the payee fail in his business the maker would be excused from payment of the note, or that, as here, it was intended that the benefits of the note would be *personal* to the payee? I doubt that trial judges should be burdened with the task of conjuring whether it would have been "natural" under those circumstances for such a separate agreement to have been made by the parties. Yet, under the application of the proposed rule, this is the task the trial judge would have, and in essence the situation presented in the instant case is no different.

Under the application of the codes and the present case law, proof of the existence of such an agreement would not be permitted, "natural" or "unnatural." But conceivably, as loose as the new rule is, one judge might deem it natural and another judge unnatural.[11] And in each instance the ultimate decision

---

then evidence of their alleged making must be kept from the trier of fact." (Comment 3, § 2-202; italics added.)

[10]Viz., proof of a collateral agreement should be permitted if it "is such an agreement as might *naturally* be made as a separate agreement by parties situated as were the parties to the written contract." (Restatement of Contracts, § 240, subd. (1)(b); italics added.)

[11]Or perhaps application of the new rule will turn upon the opinion of the court (trial or appellate) that it is "natural" for one family group to agree that in case of unfriendly approach by a creditor of any of them, then the debtor's property will be transferable or assignable only to other members of the family, whereas such a scheme might be considered less than "natural" for other families to pursue.

would have to be made ("naturally") on a case-by-case basis by the appellate courts.

In an effort to provide justification for applying the newly pronounced "natural" rule to the circumstances of the present case, the majority opinion next (*ante*, p. 228) attempts to account for the silence of the writing in this case concerning assignability of the option, by asserting that "the difficulty of accommodating the formalized structure of a deed to the insertion of collateral agreements makes it less likely that all the terms of such an agreement were included." What difficulty would have been involved here, to add the words "this option is nonassignable"? The asserted "formalized structure of a deed" is no formidable barrier. The Legislature has set forth the requirements in simple language in section 1092 of the Civil Code. It is this: "I, A B, grant to C D all that real property situated in [naming county], State of California, . . . described as follows: [describing it]." To this the grantor desiring to reserve an option to repurchase need only so state, as was done here. It is a matter of common knowledge that collateral agreements (such as the option clause here involved, or such as deed restrictions) are frequently included in deeds, without difficulty of any nature.

To support further speculation (*ante*, p. 228) that "the reservation of the option might well have been placed in the recorded deed solely to preserve the grantors' rights against any possible future purchasers, and this function could well be served without any mention of the parties' agreement that the option was personal," the majority assert that "There is *nothing in the record* to indicate that the parties to this family transaction, through experience in land transactions or otherwise, had any warning of the disadvantages of failing to put the whole agreement in the deed." (Italics added.) The facts of this case, however, do not support such claim of naivete. The grantor husband (the bankrupt businessman) testified that as none of the parties were attorneys "we wanted to contact my attorney . . . which we did. . . . The wording in the option was obtained from [the attorney]. . . . I told him what my discussion was with the Sines [defendant grantees] and he wanted . . . a little time to compose it . . . . And, then this [the wording provided by the attorney] was taken to the title company at the time Mr. and Mrs. Sine and I went in to *complete the transaction*." (Italics added.) The witness was an experienced businessman who thus demonstrated awareness of the wisdom of seeking legal guidance and advice in this busi-

ness transaction, and who did so. Wherein lies the naive family transaction postulated by the majority?

The majority opinion (*ante,* p. 229) then proceeds on the fallacious assertion that the right to transfer or to assign an option, if it contains no provisions forbidding transfer or indicating that performance involves elements personal to the parties, is a mere disputable presumption, and in purported support cites cases *not one of which involves an option* and *in each of which the presumption which was invoked served to supply a missing but essential element of a complete* agreement.[12] As already emphasized hereinabove, the right of free transferability of property, including options, is one of the most fundamental tenets of substantive law, and the crucial distinction would appear self-evident between such a basic right on the one hand, and on the other hand the disputable evidentiary presumptions which the law has developed to supply terms lacking from a written instrument but essential to making it whole and complete. *There is no such lack in the deed and the option reservation now at issue.*

The statement of the majority opinion (*ante,* p. 230) that in the absence of a controlling statute the parties may provide that a contract right or duty is nontransferable, is of course true. Equally true is the next assertion (*ante,* p. 230) that "even when there is no explicit agreement—written *or* oral—that contractual duties shall be personal, courts will effectuate a presumed intent to that effect if the circumstances indicate that performance by a substituted person would be different from that contracted for." But to apply the law of contracts for the rendering of personal services to the reservation of an option in a deed of real estate calls for a misdirected use of the rule, particularly in an instrument containing not one word from which such "a presumed intent to that effect" could be gleaned. Particularly is the holding objectionable when the result is to upset established statutory and case law in this state that "circumstances" shown by parol may *not* be employed to contradict, add to or detract from, the agreement of the parties as expressed by them in writing. And once again the quoted pronouncement of the majority concerning the show-

---

[12]Thus in *American Industrial Sales Corp.* v. *Airscope, Inc., supra* (1955) 44 Cal.2d 393, 397, the missing element was the place of payment of a note; in *Richter* v. *Union Land etc. Co.* (1900) 129 Cal. 367, 375 [62 P. 39], the missing element was the time of delivery; in *Wolters* v. *King* (1897) 119 Cal. 172, 175-176 [51 P. 35], it was the time of payment; and in *Mangini* v. *Wolfschmidt, Ltd., supra* (1958) 165 Cal. App.2d 192, 200, and *Zinn* v. *Ex-Cell-O Corp.* (1957) 148 Cal.App.2d 56, 73-74 [306 P.2d 1017], it was the duration of an agency contract.

ing of "circumstances" by parol fails to find support in the cases they cite,[13] which relate to a patent license agreement, held to be assignable absent terms indicating a contrary intent; a contract to sell grapes also held assignable; a contract which included language showing the intent that it be nonassignable; a contract to buy land held to be assignable because approval of title by the buyer was held not to be a *personal* privilege attaching only to the assignor; and to contracts for personal services.

Neither personal skill nor personal qualities can be conjured as a requirement for the exercise of the option reserved in the deed here, regardless of how ardent may be the desire of the parties (the bankrupt husband-optionee and his sister), "to keep the property in the . . . family." Particularly is this true when a contrary holding would permit the property to be acquired by plaintiff referee in bankruptcy for the benefit of the creditors of the bankrupt husband.

Comment hardly seems necessary on the convenience to a bankrupt of such a device to defeat his creditors. He need only produce parol testimony that any options (or other property, for that matter) which he holds are subject to an oral "collateral agreement" with family members (or with friends) that the property is nontransferable "in order to keep the property in the family" or in the friendly group. In the present case the value of the ranch which the bankrupt and his wife held an option to purchase has doubtless increased substantially during the years since they acquired the option. The initiation of this litigation by the trustee in bankruptcy to establish his right to enforce the option indicates his

---

[13]In *Farmland Irr. Co.* v. *Dopplmaier, supra* (1957) 48 Cal.2d 208, 222, the court in holding that a patent license agreement *was* assignable pursuant to the policy "clearly manifested" by "the statutes in this state . . . in favor of the free transferability of all types of property, including rights under contracts," stated "The *terms and purpose* of a contract may show however, that it was intended to be nonassignable. Thus the *duties imposed* upon one party may be of such a *personal nature* that their performance by someone else would in effect deprive the other party of that for which he bargained. The duties in such a situation cannot be delegated." (Citing *La Rue* v. *Groezinger* (1890) 84 Cal. 281, 283-285, which held (p. 286 [24 P. 42, 18 Am.St.Rep. 179]) that a contract to sell grapes from a certain vineyard *was* assignable to the purchaser of the vineyard, as nothing in the contract language excluded the "idea of performance by another," and (p. 287) there was "nothing in the nature or circumstances . . . which shows that the skill or other personal quality of the party was a distinctive characteristic of the thing stipulated for, or a material inducement to the contract.")

In *Prichard* v. *Kimball, supra* (1923) 190 Cal. 757, 764-765, next cited by the majority, the *written contract contained language* showing the intent that it be nonassignable (as already pointed out hereinabove).

belief that there is substantial value to be gained for the creditors from this asset of the bankrupt. Yet the majority opinion permits defeat of the trustee and of the creditors through the device of an asserted collateral oral agreement that the option was "personal" to the bankrupt and nonassignable "in order to keep the property in the family"![14]

It also seems appropriate to inquire as to the rights of plaintiff wife in the option which she holds with her bankrupt husband. Is her interest therein also subject to being shown to be personal and not salable or assignable? And, what are her rights and those of her husband in the ranch land itself, if they exercise their option to purchase it? Will they be free to then sell the land? Or, if they prefer, may they hold it beyond the reach of creditors? Or can other members of "the family" claim some sort of restriction on it in perpetuity, established by parol evidence?

And if defendants sell the land subject to the option, will the new owners be heard to assert that the option is "personal" to the optionees, "in order to keep the property in the *Masterson* family"? Or is that claim "personal" to defendants only?

These are only a few of the confusions and inconsistencies which will arise to plague property owners and, incidentally, attorneys and title companies, who seek to counsel and protect them.

I would hold that the trial court ruled correctly on the proffered parol evidence, and would affirm the judgment.

McComb, J., concurred.

Respondents' petition for a rehearing was denied March 6, 1968, and the opinion was modified to read as printed above. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

---

*Simmons* v. *Zimmerman* (1904) 144 Cal. 256, 260-261 [79 P. 451, 1 Ann. Cas. 850], held that a contract to buy land *was* assignable, as approval of title by the buyer is *not* a personal privilege attaching only to the assignor (the party to whom the seller agreed to sell). *La Rue* v. *Groezinger* has already been shown not to support the majority's proposition here. And the last case which the majority cite, *Coykendall* v. *Jackson* (1936) 17 Cal.App.2d 729, 731 [62 P.2d 746], involved a contract for *personal services*, almost uniformly held to be nonassignable; it did *not* deal with a contract or an option to buy property, which ordinarily imposes no other obligation on the buyer than to *make payment*, as does the option now before this court.

[14] As noted at the outset of this dissent, it was by means of the bankrupt's own testimony that defendants (the bankrupt's sister and her husband) sought to show that the option was personal to the bankrupt and thus not transferable to the trustee in bankruptcy.