In the Matter of **WILLIAM RAKE-STRAW CO., Inc.**, Bankrupt.

**MARIN FOODS, INC.**, Appellant,

v.

Walter J. **HEMPY**, Trustee in Bankruptcy, Appellee.

No. 24771.

United States Court of Appeals, Ninth Circuit.

Aug. 27, 1971.

Warren A. Palmer (argued), San Francisco, Cal., for appellant.

David R. Kluge (argued), James M. Conners, San Francisco, Cal., for appellee.

Before MADDEN, Judge of the United States Court of Claims,* and BROWNING and CHOY, Circuit Judges.

CHOY, Circuit Judge.

In this bankruptcy case, Marin Foods, Inc. (Marin), an unsecured creditor of the bankrupt corporation William Rakestraw Co., Inc., (bankrupt), appeals from a District Court order denying its petition for review of, and approving and confirming certain orders of the Referee in Bankruptcy, which were issued during the administration of the bankrupt's estate.

By Agreement of Sale, dated February 11, 1965, Marin agreed to sell Gary's Market in Marin County, California, to William Rakestraw, (Rakestraw), the Agreement expressly providing that it would bind and inure to the benefit of the parties, their heirs, successors, and assigns. On the same date, the parties also executed two sets of escrow instructions and a Management Contract, under which Rakestraw was to manage Marin's liquor business in the market for a percentage of the profits. By a Supplement to the Agreement, also dated February 11, 1965, Rakestraw agreed to assume Marin's secured obligations to several specifically designated creditors.

It was the understanding of the parties that Rakestraw would form a corporation which would assume his obligations and liabilities arising from the transaction. The corporation, William Rakestraw Co., Inc., was formed and supplanted Rakestraw as purchaser of the market. The corporation was adjudicated a bankrupt in November 1967.

Marin's proof of claim filed in the bankruptcy proceeding totaled $88,337.97, $14,013.11 of which the Referee allowed. The parties do not contest this allowance. However, Marin's claim also included $60,000 in unsecured debts which Marin alleged Rakestraw, concurrently with the execution of the written contracts, orally agreed to pay as an additional and integral consideration for the sale of the market. The Referee denied this portion of Marin's claim on the grounds that (1) the parol evidence rule barred proof of the alleged oral agreement; (2) Marin had not paid the disputed obligations before making its claim; and (3) liquidation or estimation of Marin's oral claim would unduly delay the administration of the bankrupt estate.

Among the other claims the Referee did allow was a claim of $224,033.29 by Allied Grocers of California, Ltd., (Allied), for groceries sold on open account to the bankrupt. The bankrupt acknowledged this debt as due and owing, and it was listed on the creditors' schedule. Marin contends that Allied's claim was just as "unliquidated" as its own disallowed claim; and therefore, it too should have been disallowed.

The issues presented for decision are the correctness of the Referee's decisions (1) allowing Allied's claim, and (2) disallowing Marin's $60,000 claim for the three reasons given above.[1]

* J. Warren Madden, Senior Judge of the United States Court of Claims, sitting by designation.

1. As a further complication, both Marin and Allied had filed actions in the California Superior Court seeking damages

### 1. Allied's Claim

■ We find no merit in Marin's argument that the Referee erred in allowing Allied's claim against the bankrupt. There is a great difference between Allied's claim for goods sold and received, which the bankrupt acknowledged on its schedule of creditors, and Marin's claim for breach of contract. While Marin's claims are disputed, Allied's was not. We affirm the Referee's allowance of Allied's claim.

### 2. Parol Evidence

■ In denying Marin's claim based on the alleged oral agreement with Rakestraw to assume the unsecured debts of the market the Referee relied primarily on the parol evidence rule, which dictates that testimony of a prior or contemporaneous oral agreement is inadmissible to vary the terms of an integrated written contract. 4 Williston on Contracts, sec. 631 (3rd ed. 1961); Masterson v. Sine, 68 Cal.2d 222, 225, 65 Cal. Rptr. 545, 436 P.2d 561 (1968); Cornwell Quality Tools Co. v. C.T.S. Co., Inc., 446 F.2d 825 (9th Cir., 1971). On the other hand, oral evidence is admissible to explain an ambiguous term, Continental Baking Co. v. Katz, 68 Cal.2d 512, 67 Cal.Rptr. 761, 439 P.2d 889 (1968), or to add a not inconsistent term to a partially integrated document, Mangini v. Wolfschmidt, 165 Cal.App.2d 192, 331 P.2d 728 (1958).

■ However, under California law, before the parol evidence rule may be applied, a preliminary determination must be made as to the integration of the contract, based on the parties' intent. The face of the document is of some help, but it is not conclusive. *Masterson, supra*, 68 Cal.2d at 225–227, 65 Cal. Rptr. 545, 436 P.2d 561. A "rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove that intention of the parties." Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 39–40, 69 Cal.Rptr. 561, 565, 442 P.2d 641 (1968).

■ There is no indication whatsoever in the record that the Referee received any evidence on the parties' intentions. On the evidence before him, based solely on the written documents, he could not determine whether or not the parties intended the written contracts to be integrated. Indeed, the evidence which does appear on the record strongly intimates that the parties did not intend that the written documents would be the sole measure of their bargain.

There is no merger clause in these agreements which by its terms limits the contract to the written documents. Nor is there any specific mention of unsecured creditors. The Referee's reliance on the escrow agreements and their mention of "bona fide creditors" appears unwarranted. "Bona fide creditors" is at best an ambiguous term. Did the parties mean to include all creditors, secured creditors only, solely those secured creditors mentioned in the Supplemental Agreement? The face of the escrow agreements does not indicate an answer. It is possible that the escrow agreements are nothing more than a precaution taken under Article VI of the Uniform Commercial Code, California Commercial

---

against Rakestraw personally and against the bankrupt corporation for breach of contract. The Referee denied Marin's motion to stay these state court proceedings and to assume jurisdiction and determine all issues involved. Marin also appealed this ruling to this Court.

None of these actions had been adjudicated when the briefs were filed in this appeal. However, Marin's counsel represented, at oral argument and in a subsequent written summary submitted to the Court, that the lawsuits had resulted in judgments for Marin and Allied, but only against Rakestraw personally and not against the bankrupt. Marin still desires to prosecute this appeal, preferring a judgment against the bankrupt to pursuit of Rakestraw.

Since the state court actions have reached final judgment, we see no reason to rule upon the Referee's refusal to stay them.

Code, sec. 6101 et seq., which governs such bulk transfers.

In short, while the claim based on Marin's oral agreement may very well be barred by the parol evidence rule, the Referee could not competently rule on this issue until he had taken more evidence. We remand this case to him so that he will do so.

### 3. Prepayment; Undue Delay

■■ We find error in the Referee's conclusion that allowance of Marin's claim should be barred because Marin had not paid any of the unsecured creditors allegedly covered by the oral agreement. The Referee felt that Marin had sustained no damage. If, as Marin seeks to prove, Rakestraw and his successors, including the bankrupt corporation, did promise to pay Marin's unsecured creditors, failure to do so entitles Marin to recover whatever damages it sustains as a result on this breach of contract. Marin has been damaged whether it has already paid the creditors or must yet pay them. Meyer v. Parsons, 129 Cal. 653, 655, 62 P. 216 (1900); 2 Williston, *supra*, secs. 392, 393. Marin is obligated to pay its creditors if the bankrupt does not unless there is a novation or assent by the creditors to the substitution of the bankrupt as the obligor. The promisee in a third party creditor beneficiary contract may enforce it when the promisor proves recalcitrant. 11 Williston, *supra*, sec. 1421.

■ Nor is the Referee's ground valid that settlement of Marin's claim will unduly prolong the administration of the estate. While it is acknowledged that the majority of creditors should not be made to await the settlement of a single claim, ·Marin's claim comprises nearly 20% of the scheduled claims against the bankrupt and is the second single largest claim against the estate. The Referee's discretion in this matter should be exercised "in a generous and liberal way, with due regard, however, to the rights of other creditors." 3 Collier on Bankruptcy, par. 57.15(4) (14th ed. 1971). Marin's claim is not so insignificant that the Referee may ignore it on the expediency of winding up the bankrupt's affairs. *Compare* In re Hot Springs Broadcasting, Inc., 210 F.Supp. 533 (W.D., Ark., 1962).

Accordingly, we affirm the Referee's allowance of Allied's claim. However, we reverse his refusal to countenance Marin's oral claim based on the parol evidence rule, no prior payment by Marin, and undue prolongation of the estate's administration, and remand the matter to the Referee for further proceedings consistent herewith.